Patsy Coleen SMITH, Plaintiff,

v.

**DUTRA TRUCKING COMPANY, Defendant.**

**No. C–74–2738–CBR.**

United States District Court, N. D. California.

April 2, 1976.

Judith L. Edson, Victor T. Schaub, Eitzen, Schaub & Diehl, Eureka, Cal., for plaintiff.

William F. Ferroggiaro, Jr., Eureka, Cal., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, alleging discrimination in employment on the basis of sex. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. Defendant Dutra Trucking Company ("Dutra") moved for summary judgment on the ground that no employment relationship has ever existed between plaintiff and defendant.[1] The legal issue is whether plaintiff falls within the class of persons protected by Title VII of the Civil Rights Act of 1964. Plaintiff main-

---

1. Defendant also contends that plaintiff has not exhausted her administrative remedies but, because of the Court's disposition of the juris-dictional issue, the question of exhaustion of remedies need not be reached.

tains two alternative theories of coverage: (1) that she is Dutra's "employee" within the meaning of the Act, and (2) that even if not Dutra's employee, she is protected by the Act because Dutra controls her access to employment.

## I

Plaintiff, a woman, is engaged in a trucking business with her husband, Raymond A. Smith. Dutra is an "overlying carrier." To supply its customers with transportation service, Dutra makes use of both its own employees and independent owner-operators like plaintiff. The independent owner-operator works under a subhauling agreement with Dutra which recites that the subhauler is an independent contractor. Dutra collects a broker's fee of 5% as the overlying carrier. The duties of the independent operator are basically the same as that of Dutra's employees. Both arrive at and leave the jobsite at specified times. Both are paid an hourly rate, but the independent subhauler submits his own hours and is paid only for hours actually worked, whereas employees are guaranteed "4 and 8" hour minimums.[2] The independent is paid a much higher hourly rate, as he must pay all his own costs, including fuel, maintenance, and insurance. The independent is free to accept or refuse a job, and as in the instant case, the job may be of short duration.

Prior to May 16, 1974, Dutra received a request for hauling equipment and drivers from Mercer-Fraser Company, a general contractor. On May 16, 1974, pursuant to a telephone call from Dutra's dispatcher, Raymond A. Smith hauled two loads of asphalt from the Mercer-Fraser Company's asphalt plant to a jobsite some thirty miles away. In the course of that day's work, Raymond A. Smith turned the power unit[3] over to his wife, plaintiff herein. Plaintiff hauled one load of asphalt to the jobsite.

On May 17, 1974, Francis A. Dutra, President of Dutra, allegedly told Raymond A. Smith that plaintiff could not continue driving on jobs for Dutra, for the sole reason that she is a woman. It is further alleged that on May 20, 1974, Mr. Dutra called to engage one of the Smiths' two trucks but withdrew his offer upon being told that plaintiff would drive it. Mr. Dutra denies the substance of these latter allegations, but for purposes of the present motion their truth may be assumed, since they do not directly bear on the crucial issue of plaintiff's legal status under the Act.[4]

## II

This case tests the extent of Title VII's coverage. Plaintiff advances two alternative theories of coverage: (1) that an employment relationship exists between plaintiff and defendant, and (2) that even if not defendant's employee, plaintiff is protected by Title VII because defendant controls her access to employment.

It is clear that if an employer-employee relationship exists between plaintiff and defendant, then plaintiff has stated a claim under Title VII. Dutra is admittedly an "employer" as defined by the statute.[5] Consequently the decisive question is whether plaintiff is Dutra's employee or an independent contractor.

Unfortunately the statutory language is not particularly helpful in resolving this issue. An "employee" is defined as "an individual employed by an employer * * *."[6] Therefore, the first task fac-

---

2. An employee is paid for four-hour time units, even if he only works a portion thereof.

3. The power unit is the vehicle which hauls the trailer. In this case the trailer was rented from Dutra for a 20% rental fee.

4. Plaintiff contends that a motion for summary judgment is inappropriate, because her status with respect to Dutra is disputed. But whether her status is such that she may sue under Title VII is a legal question, requiring the application of law to facts. *Carnation Company v. N. L. R. B.*, 429 F.2d 1130, 1133 (9 Cir. 1970). The critical facts bearing on plaintiff's status are not in dispute, only the legal conclusion to be drawn therefrom.

5. 42 U.S.C. § 2000e(b).

6. 42 U.S.C. § 2000e(f).

ing the Court is to decide what non-statutory standard should be applied in differentiating "employee" from "independent contractor" for purposes of Title VII.

There is authority that the terms "independent contractor" and "employee" are not to be construed in their common-law sense when used in federal social welfare legislation. *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297, 299 (5 Cir. 1975), citing *N. L. R. B. v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). With respect to social legislation, the *Bartels* Court defined employees as "those who as a matter of economic reality are dependent upon the business to which they render service." *Bartels v. Birmingham, supra,* 332 U.S. at 130, 67 S.Ct. at 1550, 91 L.Ed. at 1953.

■ While conceivably it could be argued that plaintiff would be considered an "employee" under this test, the application of such a broad standard to Title VII litigation is unwarranted for the reasons discussed below. In order to determine the scope Congress intended by the term "employee", we benefit from the extensive judicial experience with the National Labor Relations Act. The Supreme Court in *N. L. R. B. v. Hearst Publications, supra,* initially gave a very broad construction to the term "employee" as used in the Act, emphasizing the history and purposes of the legislation. Commenting on the fate of that interpretation in *N. L. R. B. v. United Insurance Co.,* 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), the Court stated:

"Congressional reaction to this construction of the Act was adverse and Congress passed an amendment specifically excluding 'any individual having the status of an independent contractor' from the definition of 'employee' contained in § 2(3) of the Act. The obvious purpose of this amendment was to have the Board and the courts apply general agency principles in distinguishing between employees and independent contractors under the Act." *N. L. R. B. v. United Insurance Co., supra,* 390 U.S. at 256, 88 S.Ct. at 989, 19 L.Ed.2d at 1086.[7]

While the Court agrees with plaintiff that Title VII is not to be construed narrowly, there is nothing in the legislative history of the Act to indicate a Congressional intent to construe the term "employee" in any manner other than in accordance with common-law agency principles. Those are the principles by which plaintiff's assertion that she is an employee must be evaluated.

■ The traditional common-law test for distinguishing between employees and independent contractors is the "right to control" reserved by the person for whom the work is being done, "not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished". *N. L. R. B. v. Phoenix Life Insurance Co.,* 167 F.2d 983, 986 (7 Cir. 1948), *cert. denied,* 335 U.S. 845, 69 S.Ct. 68, 93 L.Ed. 395 (1948). With respect to Dutra, the test is not difficult to apply. As an overlying carrier, Dutra exercises minimal control over the subhaulers with whom it contracts. Plaintiff and her husband own their own equipment and pay their own costs, such as license fees and taxes. They may obtain health and disability insurance from any qualified source. They buy their gasoline, oil and garage services from suppliers of their own selection. They pay a rental fee to Dutra for the use of its trailer. Their profit is the difference between their operating costs and the hourly rate they are paid by Dutra. No continuing rela-

---

7. It should be noted that the four cases cited by the Fifth Circuit in *Mednick* were decided prior to the passage of the abovementioned amendments to the National Labor Relations Act, which in effect repudiated the loose construction of "employee" announced in *N. L. R. B. v. Hearst Publications, supra.*

tionship between the Smiths and Dutra was implied by the subhauling agreement. They were contracted only for as long as was required to do a specific job. The mere fact that plaintiff received an hourly rate, was directed to the jobsite, and was requested to arrive and depart at specified times did not transform her into an employee. *See generally Associated Independent Owner-Operators, Inc. v. N. L. R. B.*, 407 F.2d 1383 (9 Cir. 1969). To support her assertion of "employee" status, plaintiff cites *Associated General Contractors of Calif., Inc.*, 201 N.L.R.B. 311 (1973), the only case cited by either party which specifically analyzes overlying carriers. The Board in that case declined to decide the status of the overlying carrier and instead remanded the question to the appropriate Regional Director. On March 5, 1974, the Board supplemented its earlier decision with a finding that under the right-of-control test, the overlying carrier was *not* a joint employer with the contractors. *Associated General Contractors of Calif., Inc.*, 209 N.L.R.B. 363, 364–365 (1974); *Associated General Contractors of Calif., Inc.*, 209 N.L.R.B. 366 (1974).[8] Applying the facts alleged to the common-law standard, plaintiff is clearly an independent contractor with respect to Dutra, and as such is not covered by Title VII.

### III

Plaintiff's second theory of coverage is that regardless of her status with respect to Dutra, the alleged discrimination is proscribed by Title VII because Dutra controls plaintiff's access to employment.

Plaintiff relies on two cases for the proposition that a direct employment relationship is not a prerequisite to asserting a Title VII claim, *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973), and *Puntolillo v.*

*New Hampshire Racing Commission*, 375 F.Supp. 1089 (D.N.H.1974).

In *Sibley*, a male nurse brought suit under Title VII alleging that the defendant hospital discriminated on the basis of sex by refusing to refer male nurses to female patients. No employment relationship existed between plaintiff and the hospital. Summary judgment had been granted by the district court, *sua sponte*. Upon appeal the Circuit Court held that a *direct* employment relationship was not required under the statute. The court pointed out that the section defining "unlawful labor practice"[9] speaks of "individuals" rather than "employees", and that the provisions in the Act relating to the filing of complaints with the EEOC and in the District Court use the broad term "person aggrieved".[10] Finally, the court found it very significant "that the Act has addressed itself directly to the problems of interference with the direct employment relationship by labor unions and employment agencies—institutions which have not a remote but a highly visible nexus with the creation and continuance of direct employment relationships between third parties." *Sibley, supra*, 488 F.2d at 1342. In short, since the hospital was a statutory "employer" who controlled Sibley's access to employment, the court reasoned that the hospital's decision to block that access on invidious grounds was proscribed by the Act, reversed the decision below and remanded the case back for further proceeding.

*Puntolillo* involved a driver-trainer of horses whose opportunities for employment by horse owners were severely curtailed by his inability to obtain stall space and a license from the responsible agencies. Relying heavily on *Sibley*, the *Puntolillo* court held that a Title VII action could be maintained against the state Racing Commission and the Trotter

---

**8.** Inexplicably, counsel for Dutra did not cite the subsequent decisions of the Board which support its position that there was no employer-employee relationship between the overlying carrier and the owner-operators. Indeed, the Court's task in deciding this case was un-duly prolonged because neither party cited the relevant and applicable authorities to this first theory of coverage.

**9.** 42 U.S.C. § 2000e–2(a).

**10.** 42 U.S.C. § 2000e–5.

and Breeder Association, because each met the statutory definition of employer and together controlled access to plaintiff's job market.

■ .Plaintiff concludes, without articulating her argument, that *Sibley* and *Puntolillo* make it clear that the relationship between Dutra and plaintiff is within the contemplation of Title VII. Presumably, the argument is that Dutra discriminatorily blocked plaintiff's access to employment in its capacity as an overlying carrier.

There are, however, critical differences between *Sibley* and *Puntolillo* and the instant case. First, both *Sibley* and *Puntolillo* concern interference with the creation of direct *employment* relationships.

> "To permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's *employment* opportunities *with another employer*, while it could not do so with respect to employment in its own service, would be to condone continued use of the very criteria for employment that Congress has prohibited." *Sibley, supra,* 488 F.2d at 1341 (emphasis added).

Plaintiff must therefore show that the relationship allegedly interfered with was in the nature of employment.[11]

■ There are no facts before the Court to indicate that plaintiff was an employee, or sought to become an employee, of Mercer-Fraser Company, the third-party employer to whom Dutra allegedly blocked access. Many of the considerations which persuade the Court that plaintiff is an independent contractor with respect to Dutra also militate against a finding that she was Mercer-Fraser Company's "employee". Nor does plaintiff have a claim with respect to

other potential "employers". Whether, but for Dutra's alleged discrimination, plaintiff might have worked for a general contractor who retained such extensive control over plaintiff that she would be an "employee" by common-law standards is a question too speculative for the Court to consider. A claim may not be based on a series of speculations and conjectures. In sharp contrast, in *Sibley* and *Puntolillo* the nature of the relationship interfered with was determinable.

A second critical difference between *Sibley* and *Puntolillo* and the instant case is the degree of control over plaintiff's job market exercised by defendant. In *Sibley,*

> "[The hospital] did, however, control the premises upon which those services were to be rendered, *including* [plaintiff's] *access to the patient for purposes of the initiation of such employment."* *Sibley, supra,* 488 F.2d at 1342 (emphasis added).

In *Puntolillo*, the defendant New Hampshire Racing Commission had virtually complete control over plaintiff's access to employment through its licensing power. Here, however, plaintiff is not subject to defendant's authority. Plaintiff is not obligated to seek contracts through Dutra, nor can Dutra deny plaintiff access to any potential employer. It is true that because Dutra does not contract with plaintiff, she has fewer work opportunities, but Dutra's decision not to use plaintiff is not tantamount to blocking her access to employment.

### IV

The Court finds that plaintiff does not have a remedy under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* She is not defendant's employee within the meaning of the Act, nor does defendant control plaintiff's ac-

---

**11.** Curiously, in neither *Sibley* nor *Puntolillo* did the courts specifically find that access to *employment* relationships was denied. Arguably, a male nurse who works on a day-to-day basis or a driver-trainer who works for a horse owner is an independent contractor. Nevertheless the language of the opinions is con-

fined to interference with employment opportunities. Moreover, it is clear that the opinions cannot be read as applying to the independent contractor context; otherwise Title VII would authorize a cause of action for discriminatorily blocking access to a type of relationship which is itself not covered by the Act.

cess to employment. The foregoing constitutes the Court's Findings of Fact and Conclusions of Law. Accordingly,

IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted and the action is dismissed.

IT IS HEREBY FURTHER ORDERED that counsel for defendant shall prepare an appropriate form of judgment in accordance with this Memorandum of Opinion.