Cordia BEVERLEY, M.D., Plaintiff,

v.

R. Gordon DOUGLAS, Jr., individually and in his official capacities as Chairman of the Department of Medicine at Cornell University Medical College and as Physician-in-Chief at The New York Hospital, Joseph R. Artusio, Jr., individually and in his official capacity as President of the Medical Board of The Society of The New York Hospital, Norman Javitt, individually and in his official capacity as Chief of Hepatic Diseases at The New York Hospital-Cornell Medical Center, David D. Thompson, individually and in his official capacities as Vice-President and Director of The Society of The New York Hospital, The New York Hospital, The Society of The New York Hospital, Cornell University Medical College, The New York Hospital-Cornell Medical Center, Defendants.

No. 83 Civ. 7378.

United States District Court,
S.D. New York.

July 30, 1984.

Kelley, Drye & Warren, New York City, for defendants; Eugene T. D'Ablemont, John F. Gibbons, Bonnie S. Wess, New York City, of counsel.

Charles P. Kelly, Garden City, N.Y., for plaintiff.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Dr. Cordia Beverley, received her M.D. degree from the New York University School of Medicine, and trained between 1979 and 1982 in a three year clinical fellowship in gastroenterology at New York Hospital ("the Hospital"), a teaching hospital affiliated with Cornell University Medical College ("the College"). As her fellowship drew to a close, plaintiff applied for, and was denied, voluntary admitting privileges at the Hospital, and a corresponding voluntary faculty appointment at the College. She alleges that the denial was based upon her race (Black) and sex, and asserts six claims against the Hospital, its governing body—the Society of the New York Hospital ("the Society"), the College, and four individuals: Dr. Joseph Artusio, the President of the Medical Board of the Society; Dr. Gordon Douglas Jr., the Chief of Service of the Hospital's Department of Medicine; Dr. Norman Javitt, the Chief of the Division of Hepatic Diseases of the Hospital's Department of Medicine; and Dr. David Thompson, the Vice-President and Director of the Society. The first claim alleges that defendants' denial of her application for voluntary admitting privileges and a corresponding voluntary faculty appointment was part of a pattern and practice of discrimination on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1974, 42 U.S.C. § 2000e et seq. (1982). The second claim, which is brought pursuant to 42 U.S.C. § 1983 (1982), alleges that defendants acted under color of state law to deprive plaintiff of her civil rights by denying her application for voluntary admitting privileges and the corresponding faculty appointment on the basis of race and sex. Third, plaintiff claims that she was denied voluntary admitting privileges and the corresponding faculty appointment because of her race, in violation of 42 U.S.C. § 1981 (1982). Her fourth claim, which is brought under New York State law, alleges that defendants' disposition of plaintiff's application for voluntary admitting privileges was arbitrary, capricious, and in violation of defendants' own by-laws, and thereby deprived plaintiff of employment opportunities and income without due process of law. Fifth, plaintiff claims that defendants' denial of her application for voluntary privileges violated the Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution.

Finally, in a proposed amendment to her complaint,[1] plaintiff alleges that in the third year of her fellowship, she was denied the title of "instructor," and denied an appointment to the full-time faculty of the College, because of her race, in violation of 42 U.S.C. § 1981 (1982).

Defendants move for summary judgment on each of the six claims. Summary judgment under Fed.R.Civ.P. 56 is a "drastic device"[2]—one that our Court of Appeals has applied rigidly and "with some timidity" to insure that a litigant is not deprived of the right to a jury trial.[3] At the same time, however, our Court of Appeals has recognized that, [s]ummary judgment ... is a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial."[4] The moving party has the burden of proving "the absence of any material issue genuinely in dispute."[5] To defeat a motion for summary judgment, the opposing party may not rest on mere conclusory allegations or denials, but must set forth, by competent evidence, specific facts showing that there is a genuine issue for trial.[6] The Court "cannot try issues of fact; it can only determine whether there are issues to be tried,"[7] and must resolve "all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought."[8] Mindful of these principles, the Court is convinced that defendants have met the heavy burden of proving that summary judgment is warranted.

*Title VII Claim:*

Defendants seek summary judgment on plaintiff's Title VII claim on three grounds: first, they argue that the appointment to the voluntary attending staff (and the concomitant appointment to the voluntary faculty) is not an employment opportunity within the terms of Title VII; second, they argue that plaintiff's Title VII claims are time barred because plaintiff failed to file a complaint with the proper administrative agencies within 300 days of the alleged discriminatory act; and third, they assert that the undisputed facts show that the denial of plaintiff's application for voluntary privileges was based upon a nondiscriminatory reason that was not pretextual. Because the resolution of the issue of time-bar could obviate the need to reach questions going to the merits of plaintiff's claim, the Court will address that issue first.

Plaintiff asserts that she first applied for voluntary admitting privileges in August, 1981, while defendants assert that she applied on January 8, 1982. In any event, the application was denied by Dr. Douglas in a letter dated February 26, 1982, which stated:

> I've received your request for admitting privileges to the New York Hospital. At the present time the admitting privileges

---

1. Plaintiff asserted that she was discriminatorily denied instructor status and a full-time faculty appointment for the first time in a cross-motion to amend her complaint that was filed in response to defendants' summary judgment motion. Defendants oppose the motion. As leave to amend is to be freely given, Fed.R.Civ.P. 15(a), the Court grants plaintiff's cross-motion, and will treat the defendants' summary judgment motion as if it were directed to the amended complaint.

2. *Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir.1975) *(quoting Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir. 1975)).

3. *Applegate v. Top Assocs., Inc.,* 425 F.2d 92, 96 (2d Cir.1970).

4. *Id.*

5. *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983); *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980); *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 *(citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

6. *See Wyler v. United States,* 725 F.2d 156 (2d Cir.1983); *Quinn,* 613 F.2d at 445; *SEC v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978).

7. *Schering Corp.,* 712 F.2d at 9 *(quoting Heyman,* 524 F.2d at 1320); *see also Katz v. Goodyear Tire and Rubber Co.,* 737 F.2d 238 at 244 (2d Cir.1984).

8. *Heyman,* 524 F.2d at 1320.

are restricted to former chief residents and new fulltime appointees within the various categorical divisions of the department.

Pursuant to the Hospital's by-laws, Dr. Beverley requested a review of Dr. Douglas' decision. Upon review, the decision first was reaffirmed first by the Promotion and Privileges Committee of the Hospital's Department of Medicine. Then on June 7, 1982, the Quality Assurance Committee reviewed the denial and decided to "recommend" that privileges be denied to Dr. Beverley for the reasons stated by Dr. Douglas. After granting Dr. Beverley a hearing, the Hospital's Medical Board recommended to the Hospital's Board of Governors, on September 14, 1982, that privileges be denied. Plaintiff was advised that the Medical Board chose to make the recommendation because:

> [A]s you have been advised by Dr. Douglas, the granting of medical staff membership in the Hospital's Department of Medicine is presently limited to former chief residents and new full-time appointees within categorical divisions of the Department. In addition, until a full-time division chief is appointed in your subspecialty area of gastroenterology, the Department of Medicine does not intend to add any full-time or voluntary attending physicians in that division.

On November 17, 1982, the Board of Governors notified plaintiff that the recommendations of the Medical Board had been accepted. The Board stated, however, that "[b]efore this decision becomes final, you may request an appearance before the Board of Governors in accordance with ... [the Society's] By-Laws." Plaintiff did appear; subsequently, on February 11, 1983, she was notified that the decision to deny her application "has been made final."

Plaintiff then filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") on March 31, 1983, alleging that the February 11, 1983 notification was the date "the denial

was finalized." The EEOC referred the charge to the New York State Division of Human Rights, pursuant to 42 U.S.C. § 2000e–5(c) (1982). On April 4, 1984, the Division waived the required deferral period and agreed to allow the EEOC to investigate the charge. Upon investigation, the EEOC determined that it had no jurisdiction because the charge had not been timely filed, and provided plaintiff with a right to sue letter on July 13, 1983.

Defendant urges the Court to adopt the EEOC's finding that the charge was not timely filed. A charge must be filed with the EEOC within 300 days of the alleged unlawful employment practice, where, as here, the charge was filed with, or referred to, a State agency.[9] Plaintiff's charge was not officially filed with the EEOC until after the Division had waived deferral and referred the charge back to the EEOC on April 4, 1983.[10] Thus, the last act of alleged discrimination must have taken place within 300 days of April 4, 1983. Defendants claim that the last act of alleged discrimination occurred on February 26, 1982, when Dr. Douglas denied plaintiff's application for voluntary admitting privileges. Plaintiff claims, however, that the last act occurred when that denial became final, on February 11, 1983, which was within the 300-day period.

While defendants do not dispute that Dr. Douglas' February 26, 1982 denial of plaintiff's application was reviewed by several higher authorities, they contend that Dr. Douglas' denial was the "operative decision" that triggered the running of the statute of limitations period. They assert that under the holdings of *Delaware v. Ricks*,[11] and *Chardon v. Fernandez*,[12] the subsequent reaffirmations of. Dr. Douglas' decision are immaterial to the timeliness of plaintiff's charge. The Court disagrees. The denial of plaintiff's application was not final until the Board of Governors accepted the recommendation of the Medical Board on February 11, 1983, after meeting with

---

**9.** 42 U.S.C. § 2000e–5(e) (1982).

**10.** *See* 42 U.S.C. § 2000e–5(c) (1982).

**11.** 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

**12.** 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).

plaintiff. The earlier "decisions" of the Quality Assurance Committee and the Medical Board were explicitly phrased as "recommendations" rather than final determinations. Indeed, even the first decision of the Board of Governors on November 17, 1982 stated that plaintiff could meet with the Board personally before "this decision becomes final." Throughout the many levels of review, until the Board of Governors met with plaintiff and issued its final decision, there was a prospect, however slight, that Dr. Douglas' recommendation would not be accepted.

■ In Ricks, the Supreme Court held that the fact that the plaintiff had filed a grievance after receiving notice of the decision did not toll the statute of limitations, as the grievance procedure was a "remedy for the prior decision, not an opportunity to influence the decision before it is made." [13] The reviews of the Medical Board and Board of Governors here were an integral part of the decision-making process, rather than a collateral proceeding analogous to a grievance procedure. In Ricks, there was a similar decision-making process, wholly apart from the grievance procedure: the Faculty Committee on Promotions and Tenure first decided whether to recommend a teacher for tenure, that decision was reviewed by the Faculty Senate, then reviewed by the Board of Trustees. The Supreme Court adopted the decision of the District Court that the statute of limitations began to run on the date of the Board of Trustees' decision. The Court did not hold, as defendants urge this Court to, that the statute of limitations was triggered by the initial adverse recommendation at the first level of review.[14] Dr. Beverley filed a charge with the EEOC within 300 days of the date the decision to deny her application became final. Accordingly, her complaint was timely filed.

**Existence of an Employment Relationship:**

■ Defendants next argue that plaintiff's Title VII claim must be dismissed because the relationship between the Hospital and the voluntary attending staff to which plaintiff sought appointment is not an employment relationship. Title VII defines employee as "an individual employed by an employer." [15] Determination of whether an individual is an employee for the purposes of Title VII requires an analysis of the "economic realities" of the situation "viewed in light of the common law principles of agency and the right of the employer to control the employee." [16] The "extent of the employers' right to control the 'means and manner' of the worker's performance is the most important factor." [17] The D.C. Circuit has indicated that other factors to be considered include:

1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; 2) the skill required in the particular occupation; 3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; 4) the length of time during which the individual has worked; 5) the method of payment, whether by time or by the job; 6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; 7) whether annual leave is afforded; 8) whether the work is an integral part of the business of the 'employer'; 9) whether the worker accumulates retirement benefits; 10) whether the 'employer' pays Social Security taxes; and 11) the intention of the parties.[18]

---

**13.** 449 U.S. at 261, 101 S.Ct. at 505.

**14.** *See also Pauk v. Board of Trustees,* 654 F.2d 856 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d·866 (1982); *Carpenter v. Board of Regents,* 529 F.Supp. 525 (W.D.Wis. 1982), *aff'd,* 728 F.2d 911 (7th Cir.1984).

**15.** 42 U.S.C. § 2000e(f) (1982).

**16.** *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 341 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982); *Hickey v. Arkla Indus.,* 699 F.2d 748, 751 (5th Cir.1983); *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979).

**17.** *Spirides,* 613 F.2d at 831.

**18.** *Id.* at 832.

Consideration of each of the relevant factors leaves no room to doubt that the relationship between the Hospital (and the College) and the voluntary staff is not one of employment. The Hospital has both full-time attending staff, who have a concomitant status as full-time members of the faculty of the Medical College, and voluntary attending staff, who enjoy a concomitant appointment to the voluntary faculty of the Medical College. Full-time staff doctors are employees of the Hospital and the College; voluntary staff doctors are not employees. There is a sharp delineation in the duties, functions, and relationship to the Hospital and the College of each of the two groups. Defendants assert, and plaintiff does not dispute, that full-time staff physicians have Hospital-based practices. Physicians with voluntary privileges have practices outside the Hospital and are self-employed or are professional corporations. Full-time attending staff members are paid a salary by the Hospital, from which income and social security taxes are withheld, while voluntary staff members receive no salary, and are paid directly by their patients. The licensing fees and professional dues of full-time attending physicians are paid by the Hospital, which also provides them with retirement benefits, health and life insurance, and coverage under the Hospital's malpractice insurance policy; voluntary attending staff members receive no such benefits. The Hospital provides office space and support staff for full-time attending staff; the voluntary staff members have no offices at the Hospital. The Hospital exercises some control over the work of its full-time attending physicians—it can direct staff members to work at affiliated hospitals, for example, and can hold full-time attending physicians accountable for their time. No such control is exercised over voluntary attending doctors.

Plaintiff states that there are "numerous indicia of employment for voluntary physicians" in that "voluntary attending physicians work in the clinics, attend in the wards and teach medical students, all at the request of the department chairmen who hold the power of reappointment to staff and privileges position." Those facts, however, shed no light on whether the voluntary staff physicians are employees of the Hospital, because they would apply equally to an independent contractor, or even to a physician who volunteered his or her services to the Hospital without requiring the *quid pro quo* of admitting privileges. They simply show that voluntary attending physicians performed some work at the Hospital.

Plaintiff also argues that even if the relationship between the Hospital and voluntary attending physicians is not one of employment, her application for voluntary admitting privileges would nevertheless come under the coverage of Title VII, because the Hospital's denial of her application "interfered with plaintiff's employment opportunities." There must be some nexus with an employment relationship for Title VII to apply, but the connection need not necessarily be direct.[19] Thus, several courts have indicated that a plaintiff may come under the protection of Title VII if a defendant significantly affected or controlled plaintiff's access to other employment opportunities in a discriminatory manner.[20]

In *Sibley Memorial Hospital v. Wilson*,[21] for example, the D.C. Circuit held that a male private duty nurse had stated a Title VII claim against the hospital, even though it was not his employer, because

**19.** *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980); *see also Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir.1973); *Pao v. Holy Redeemer Hosp.*, 547 F.Supp. 484, 494 (E.D.Pa.1982); *Smith v. Dutra Trucking Co.*, 410 F.Supp. 513 (N.D.Ca.1976), *aff'd mem.*, 580 F.2d 1054 (9th Cir.1978); *Mathis, v. Standard Brands Chem. Indus.*, 10 Fair Empl. Prac.Cas. (BNA) 295 (N.D.Ga.1975).

**20.** *Gomez v. Alexian Bros. Hosp.*, 698 F.2d 1019 (9th Cir.1983); *Sibley*, 488 F.2d 1338; *Pao*, 547 F.Supp. 484; *Puntolillo v. New Hampshire Racing Comm'n*, 375 F.Supp. 1089 (D.N.H.1974).

**21.** 488 F.2d 1338 (D.C.Cir.1973).

the hospital's supervisory nurses allegedly had refused him access to a female patient to whom he had been assigned to work. Patients at the hospital who required the services of a private duty nurse requested a referral from the hospital's nursing office, which then asked a nurses' registry to match the request with the name of a nurse who had indicated his or her availability for the day. The patient was informed that neither the Hospital nor the registry could discriminate on the basis of race, age, or sex, and that if the nurse referred was in any way unacceptable to the patient, the patient nevertheless was obligated to pay the nurse for one day's work. The plaintiff in *Sibley* alleged that although his name had been matched with a request from a female patient, the Hospital's staff prevented him, because of his sex, from reporting to work for the patient, and thereby becoming entitled to pay whether or not the patient accepted him. The Court held that if the allegations were proved, the Hospital would be liable under Title VII, because it had interfered with plaintiff's relationship with a potential employer.[22]

Similarly, in *Gomez v. Alexian Brothers Hospital*,[23] the Ninth Circuit reversed a grant of summary judgment to the hospital, where the hospital had refused to award a contract for the operation of the hospital's emergency room services to a professional corporation, American Emergency Services ("AES"), allegedly because many of AES' employees, including plaintiff, were Hispanic. The Court acknowl-

edged that there was no employment relationship between AES and the hospital, or between plaintiff and the hospital, but held that plaintiff had stated a claim under Title VII by alleging that the hospital had interfered with the conditions of plaintiff's employment relationship with AES by denying AES the contract because of plaintiff's race.

Plaintiff's attempt to align her claim with those upheld in *Sibley* and *Gomez* is not persuasive. Even assuming that plaintiff has alleged that the Hospital's denial of her application for voluntary attending privileges interfered with her relationship to her patients,[24] her relationship to her patients is not one of employment. Indeed, plaintiff admits that "there is no question that a 'physician, in his or her relationship with patients, is the classic independent contractor.'" In order to invoke Title VII, plaintiff must allege and prove some link between the defendants' actions and an employment relationship.[25] No such connection is present here—by plaintiff's own admission, her relationship to her patients is not that of employer and employee—and defendants accordingly are entitled to summary judgment on the Title VII claim.[26]

*Constitutional and § 1983 Claims:*

Plaintiff's second claim alleges that defendants acted under color of state law in discriminatorily denying her application for voluntary staff privileges, and seeks recovery of damages pursuant to 42 U.S.C. § 1983 (1982). Her fifth claim alleges that defendants' denial of her application violat-

---

**22.** The *Sibley* Court apparently assumed that the relationship between the private duty nurse and the patient was one of employment. *See Dutra Trucking*, 410 F.Supp. at 518 n. 11. Because the patient was obligated to pay the nurse one day's wages even if the patient chose not to engage the nurse's services, the relationship was unlike the traditional relationship between doctor and patient.

**23.** 698 F.2d 1019 (9th Cir.1983).

**24.** Plaintiff alleges that defendants' denial of her application deprived her of employment opportunities and caused her to lose income. She does not state, however, that she lost patients, or was prevented from taking patients because she had no admitting privileges at the Hospital. In

*Sibley Memorial Hosp. v. Wilson*, 488 F.2d 1338, 1342 (D.C.Cir.1973), the hospital prevented the plaintiff from entering into employment relationships by blocking plaintiff's physical access to the potential employer. *See also Smith v. Dutra Trucking Co.*, 410 F.Supp. 513 (N.D.Ca. 1976), *aff'd mem.*, 580 F.2d 1054 (9th Cir.1978); *Puntolillo v. New Hampshire Racing Comm'n*, 375 F.Supp. 1089 (D.N.H.1974).

**25.** *Supra* note 19.

**26.** *See Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir.1980); *Smith v. Dutra Trucking Co.*, 410 F.Supp. 513 (N.D.Ca.1976), *aff'd mem.*, 580 F.2d 1054 (9th Cir.1978). *But see Pao v. Holy Redeemer Hosp.*, 547 F.Supp. 484 (E.D. Pa.1982).

ed the Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution. Defendants assert that they are entitled to summary judgment on the § 1983, Fifth Amendment and Fourteenth Amendment claims because the undisputed facts show that defendants were not acting under color of state law in making the decision to deny plaintiff's application.[27]

■ The Fourteenth Amendment applies only to the acts of the states, not to conduct of private persons.[28] Section 1983, which was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, also applies only to actions taken under color of state law.[29] The Fifth Amendment applies only to the acts of the federal government.[30] The test of state action is the same for both the Fourteenth Amendment and § 1983: "is the alleged infringement of federal rights 'fairly attributable to the State?'"[31] A state "normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[32] The same standard is used to determine whether conduct is federal action.[33]

■ Plaintiff asserts that she has demonstrated the requisite state and feder-al action because her affidavit indicates that the Hospital is "a subject of significant government state and federal involvement in its building programs, patient care and residency programs.... The overwhelming percentage of its income comes from government programs ... [and] in its residency programs, New York Hospital adheres to various governmental requirements." However, the fact that an institution receives significant public funding does not make the personnel decisions of that institution acts of the state or federal government, as the Supreme Court recently made clear in *Rendell-Baker v. Kohn*.[34] In that decision, the Court held that a private school's decision to discharge certain employees was not state action, even though "virtually all of the school's income was derived from government funding."[35] Nor is extensive state regulation sufficient to make an entity's personnel actions state action, as long as the personnel actions were not compelled or influenced by any state or federal regulation.[36]

■ In short, as our Court of Appeals stated in a similar challenge to a denial of staff privileges, "the mere fact that [the State] regulates the facilities and standards of care of private hospitals does not *per se* make the acts of the hospitals in ... [re-

---

**27.** Defendants also move for summary judgment on plaintiff's Thirteenth Amendment claim upon the ground that plaintiff could not show that defendants subjected her to slavery or involuntary servitude. Plaintiff's complaint does not even allege that she was forced to work against her will, and no facts have been offered in support of the claim. The allegation does not even deserve the dignity of discussion. Summary judgment is granted to defendants on plaintiff's Thirteenth Amendment claim.

**28.** *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982); *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982); *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *Civil Rights Cases*, 109 U.S. 3, 11, 3 S.Ct. 18, 21, 27 L.Ed. 835 (1883).

**29.** *Rendell-Baker*, 457 U.S. at 838, 102 S.Ct. at 2770.

**30.** *Public Utilities Commission v. Pollak*, 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952).

**31.** *Rendell-Baker*, 457 U.S. at 838, 102 S.Ct. at 2770.

**32.** *Yaretsky*, 457 U.S. at 1004, 102 S.Ct. at 2785.

**33.** *Gerena v. Puerto Rico Legal Serv., Inc.*, 697 F.2d 447, 449 (1st Cir.1983); *Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1243 (5th Cir. 1982); *Warren v. Government Nat. Mortgage Ass'n*, 611 F.2d 1229, 1232 (8th Cir.), *cert. denied*, 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); *Geneva Towers Tenants Org. v. Federated Mortgage Inv.*, 504 F.2d 483, 487 (9th Cir. 1974).

**34.** 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

**35.** *Id.* at 840, 102 S.Ct. at 2771.

**36.** *Yaretsky*, 457 U.S. at 1004, 102 S.Ct. at 2785; *Rendell-Baker*, 457 U.S. at 841, 102 S.Ct. at 2771; *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

jecting] physicians the acts of the state." [37] Plaintiff has not alleged that the government played any part in formulating or implementing the procedures and standards utilized by the Hospital in reaching their decision to reject her application. Nor has she offered any evidence to indicate that the state or federal government played any role whatsoever in the making of the decision itself.[38] Indeed, she admits that "the Hospital, and not the United States or New York State or any of their subdivisions [sic] or agencies decides whether to grant or deny staff privileges to a physician in the absence of illegal discrimination," and despite the negative implication raised by her inclusion of the phrase "in the absence of illegal discrimination," fails to allege or submit any proof that the Hospital departed from this usual practice in denying her application.

Plaintiff has come forward with nothing to show that there was a "nexus between the particular activities challenged by the plaintiff and the State's involvement with the Hospital." [39] Summary judgment therefore is granted to defendants on plaintiff's claims under § 1983, and the Fifth and Fourteenth Amendments.

*Section 1981 Claims:*

██ Plaintiff's third claim alleges that she was denied voluntary admitting privileges because she is Black, in violation of 42 U.S.C. § 1981 (1982). However, section 1981 affords "no greater or lesser protection against discriminatory practices" than Title VII.[40] Because plaintiff has not sus-

tained her claim under Title VII, she also cannot sustain an employment discrimination claim under § 1981.

The sixth claim of plaintiff's proposed amended complaint also invokes § 1981, charging that defendants' denial of her application in July, 1981, for appointment to the full-time faculty, and their refusal to give her the title of "instructor" during the third year of her residency were based upon her race, in violation of § 1981. Defendants do not contest that instructors and full-time faculty members of the Medical College are employees. They argue, however, that the undisputed facts show that plaintiff cannot sustain her burden of proof on several elements of her claim.

██ To establish a *prima facie* case of racial discrimination under § 1981, as under Title VII, plaintiff must show: (1) that she belongs to a racial minority; (2) that she applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.[41] Defendants assert that plaintiff cannot prove that the position of instructor for which she allegedly applied remained open, or that defendants subsequently sought persons of plaintiff's qualifications, because, they assert, no fellows in plaintiff's subspecialty, gastroenterology, were given the title of instructor during plaintiff's third year. Defendants sub-

*Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 428 (2d Cir.1977) (per curiam) (*quoting Barrett v. United Hosp.*, 376 F.Supp. 791, 803 (S.D.N.Y.), aff'd mem., 506 F.2d 1395 (2d Cir.1974)).

*Schlein*, 561 F.2d at 428–29.

*Id.* at 429; see also *Ascherman v. Presbyterian Hosp. of Pac. Med. Center, Inc.*, 507 F.2d 1103 (9th Cir.1974); *Jackson v. Norton-Children's Hosp., Inc.*, 487 F.2d 502 (6th Cir.1973) (per curiam), cert. denied, 416 U.S. 1000, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974); *Ward v. St. Anthony Hosp.*, 476 F.2d 671, 675 (10th Cir.1973); *Miller v. Indiana Hosp.*, 562 F.Supp. 1259 (W.D. Pa.1983); *Salzman v. White Plains Hosp.*, No. 76 Civ. 1124, slip op. (S.D.N.Y. Oct. 11, 1977) (Griesa, J.).

*Carrion v. Yeshiva Univ.*, 535 F.2d 722, 729 (2d Cir.1976); see also *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 583–84 n. 24, 99 S.Ct. 1355, 1364–65 n. 24, 59 L.Ed.2d 587 (1979); *Scott v. Univ. of Delaware*, 601 F.2d 76, 79–80 n. 2 (3d Cir.), cert. denied, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 189 (1979); *Wintz v. Port Authority*, 551 F.Supp. 1323, 1325 (S.D.N.Y.1982).

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The principles of *McDonnell Douglas* are applicable to § 1981 employment discrimination claims. *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1281 n. 3 (7th Cir.1977); *Sabol v. Snyder*, 524 F.2d 1009, 1012 (10th Cir.1975); *Long v. Ford Motor Co.*, 496 F.2d 500, 505 n. 11 (6th Cir.1974).

**1330**

mitted affidavits that the only clinical fellow in gastroenterology to be given that title during the entire period of plaintiff's residency was an Asian woman who had one essential difference in qualifications: she was able to devote the majority of her time to clinical work, while plaintiff's research fellowship required her to devote 80 percent of her time to research, and left her little time for the required clinical duties. Plaintiff failed to challenge these averments. On a motion for summary judgment, the opposing party "may not rest upon mere conclusory allegations or denials," but must instead set forth "supporting arguments or facts in opposition to the motion"[42] and "bring to the district court's attention some affirmative indication that [her] version of relevant events is not fanciful."[43] This plaintiff has failed to do.

As to plaintiff's claim that she was denied an appointment to the full-time faculty, defendants assert that again she cannot establish a *prima facie* case of discrimination. Dr. Norman Javitt, whom plaintiff says she approached about the appointment, swears he advised plaintiff that if she desired a full-time faculty appointment, she should submit a grant proposal for funds to support her research. According to Dr. Javitt, he told plaintiff he could not sponsor such a proposal because he had not worked with her on her research and had no expertise in the relevant area, and suggested that she ask the person with whom she had conducted her research during her fellowship to sponsor the proposal. He states that he "was unable to make any recommendation concerning an appointment to the full-time faculty at the Medical College until plaintiff submitted a grant proposal with a sponsor who could supervise her research. To my knowledge, plaintiff never submitted such a grant proposal and, in effect, prevented me from recommending her appointment ... which I would have done had she followed my ad-

vice." Dr. Javitt's affidavit is not controverted by plaintiff. Thus, it appears that she did not follow through with the required procedures, and never actually applied for a position on the full-time faculty.

Further, defendants have submitted affidavits indicating that there have been no appointments to the full-time staff of the Division of Digestive Diseases, the division in which plaintiff's subspecialty of gastroenterology falls, since plaintiff allegedly applied for a position. A temporary appointment to the full-time staff was made in October, 1980, but expired on June 30, 1981, before plaintiff applied, and was not renewed. A second temporary appointment also was not renewed after one year. Again plaintiff has come forward with no facts in support of her conclusory allegation that full-time appointments were made to others with her qualifications after she allegedly applied for the appointment.

Plaintiff's cross-motion for leave to serve an amended complaint adding this sixth claim is granted. However, plaintiff has failed to raise an issue of fact regarding crucial elements of the claim, and the unrebutted evidence indicates that she cannot make a *prima facie* showing of racial discrimination in violation of § 1981. Summary judgment therefore is granted to defendants on the sixth claim of the amended complaint.

In conclusion, summary judgment is granted to defendants on each of plaintiff's federal claims. Because only the plaintiff's state claims remain for decision, the Court declines to exercise pendent jurisdiction over those claims.

So ordered.

---

**42.** *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978); *see also Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983); *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

**43.** *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).