**Dr. S.B. PARDAZI, Plaintiff–Appellant,**

v.

**CULLMAN MEDICAL CENTER,
Defendant–Appellee.**

No. 87–7099.

United States Court of Appeals,
Eleventh Circuit.

Feb. 29, 1988.

Horace V. O'Neal, Jr., Victor L. Miller, Jr., Birmingham, Ala., for plaintiff-appellant.

Stanley A. Cash, Huie, Fernambucq & Stewart, John Herndon, Birmingham, Ala., for defendant-appellee.

---

* Honorable Alfred T. Goodwin, U.S. Circuit Judge, for the Ninth Circuit, sitting by designa-

Before ANDERSON, EDMONDSON and GOODWIN *, Circuit Judges.

GOODWIN, Circuit Judge:

Dr. S.B. Pardazi, an Iran-educated medical practitioner, appeals a summary judgment for the defendant hospital. The trial court held that because Dr. Pardazi was not an employee of the hospital, it was unnecessary to reach other questions presented in this Title VII action for damages and other relief arising out of a claim of national origins discrimination. We reverse and remand.

Before he applied for staff privileges at the defendant hospital, Dr. Pardazi had entered into an employment contract with Terry D. Neumaster, M.D., P.C., an Alabama corporation. The contract was conditioned upon Dr. Pardazi becoming a member, with staff privileges, of the defendant hospital staff.

Cullman Medical Center denied Pardazi's application in November 1983. Pardazi requested and received a rehearing. He was appointed to the active staff in March, 1984. The appointment thus was delayed for four months. It was then made subject to a one-year observation period, a deviation from the medical staff by-laws limiting observation periods to no more than four months.

Pardazi first sought relief from the Equal Employment Opportunity Commission. After the EEOC denied his claim, Pardazi filed this action against the medical center, alleging violations of Title VII, 42 U.S.C. § 2000e–2(a)(1) (1982). In his complaint, he alleged that section 2000e–2(a)(1) was violated by three acts: (1) the initial denial of his application for medical staff privileges; (2) the denial of his right to be represented by an attorney at the rehearing; and (3) the extension of the observation period from four months to one year. Pardazi sought a permanent injunction prohibiting the medical center and those connected with it from discriminating on the

tion.

basis of national origin and an order reducing his observation period to four months. He also requested damages, any appropriate further relief, and costs and attorneys' fees.

In granting the medical center summary judgment, the district court found the relationship between Pardazi and the medical center was not one of employment for Title VII purposes. In so holding, the court relied expressly upon *Beverley v. Douglas,* 591 F.Supp. 1321 (S.D.N.Y.1984), and *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340–41 (11th Cir.) (en banc), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982).

We accept the district court's finding that Pardazi was not an employee of the hospital either under the common meaning of "employee" or under the 11–factor test set forth in *Beverley,* 591 F.Supp. at 1326–27 (applying the test to find that there was no employment relationship between a hospital and its voluntary staff). The *Beverley* court's checklist was first stated by the D.C. Circuit in *Spirides v. Reinhardt,* 613 F.2d 826, 832 (D.C.Cir.1979):

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer'; (9) whether the worker accumulates retirement benefits; (10) whether the 'employer' pays Social Security taxes; and (11) the intention of the parties.

Pardazi argues, however, that the district court reads section 2000e–2(a)(1) too narrowly. He argues that the hospital's denial of staff privileges interfered with his employment opportunities—i.e., his employment contract with Terry D. Neumaster, M.D., P.C., an Alabama corporation. Several courts have recognized that Title VII's protection does extend to a claim that a defendant has interfered with an individual's employment relationship with a third party. *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 n. 3 (9th Cir.1980) (such interference "might occur where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer"); *Gomez v. Alexian Bros. Hosp. of San Jose,* 698 F.2d 1019, 1021 (9th Cir.1983) (following *Lutcher*); *Sibley Memorial Hosp. v. Wilson,* 488 F.2d 1338, 1340–41 (D.C.Cir.1973) (Title VII may not be interpreted "[t]o permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer").

We find the reasoning of the foregoing cases to be persuasive. If Dr. Pardazi can prove his claim that the hospital's discrimination against him interfered with his employment opportunities with the professional corporation, we hold that Title VII would encompass such a claim. We note that such a claim fits squarely within the language of Title VII, making it unlawful "to discriminate against any *individual* with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). In light of the remedial nature of Title VII, we decline to accept the Medical Center's unduly restrictive interpretation.

The Medical Center argues that this circuit in *Cobb,* 673 F.2d 337, rejected the proposition that Title VII encompasses such a claim. As we read *Cobb,* however, it did not address this issue. The sole issue in *Cobb* was whether the plaintiff was an employee or an independent contractor. *Cobb* did not involve an alleged interference with plaintiff's employment opportunities with another employer. Nor is *Cobb* 's analysis inconsistent with our holding to-

day.[1]

We reverse the summary judgment and remand. Upon further proceedings, the court, in deciding whether summary judgment is appropriate under Fed.R.Civ.P. 56, should determine whether Pardazi has demonstrated a "genuine issue of material fact" on the claim that the hospital's actions interfered with his opportunities and privileges under his contract.

REVERSED and REMANDED.

---

**1.** We note that some courts have gone further and held that a Title VII claimant need not demonstrate an employer-employee relationship at all. *Compare Doe v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411, 423 (7th Cir.1986) (finding a Title VII claim to be viable where the plaintiff agreed that the hospital's action discriminatorily interfered with her opportunities to provide services to her patients); *Sibley Memorial Hosp.,* 488 F.2d at 1342 (finding a potential Title VII claim where a male nurse claimed that the hospital interfered with his access to female patients); *Pao v. Holy Redeemer Hosp.,* 547 F.Supp. 484, 494–95 (E.D.Pa.1982) (finding that a Title VII claim exists where a hospital's discriminatory conduct has deprived an ophthalmologist of prospective patients); *with Beverley,* 591 F.Supp. at 1327–28 (finding that a doctor's "relationship to her patients is not one of employment"). *See also Lutcher,* 633 F.2d at 884 (finding that no cause of action was stated under Title VII where a union at most "interfered with an independent contractor relationship between" the plaintiff and a school district).

In light of our holding that Dr. Pardazi can state a Title VII claim against the hospital for interfering with his employment opportunities with the professional corporation, we need not address this further question.