Cathy S. HOLLOMAN, Plaintiff,

v.

NORTHEAST GEORGIA AREA DEVELOPMENT COMMISSION, et al., Defendants.

Civ. 86–90–ATH(DF).

United States District Court,
M.D. Georgia,
Athens Division.

June 28, 1990.

David R. Sweat, Athens, Ga., for plaintiff.

Henry D. Fellows, Jr., L. Clifford Adams Jr., Gerald W. Bowling, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for defendants.

FITZPATRICK, District Judge.

Before the court is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, a motion for summary judgment as provided by Rule 56 of the Federal Rules of Civil Procedure. Because the court will consider the briefs, affidavits and depositions on file, the court will treat the motions as one for summary judgment.

Plaintiff Cathy Holloman brought this civil rights action against defendant Northeast Georgia Area Planning and Development Commission (NEGAPDC) and defendant Clinton Lane, individually and in his official capacity as Executive Director of NEGAPDC. Plaintiff claims that the defendants wrongfully caused the termination of her contract with Jackson County. Proceeding under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1983, plaintiff seeks declaratory judgment, restitution, compensatory and punitive damages and a permanent injunction restraining defendants from maintaining a policy and practice of discrimination because of sex and pregnancy.

The court heard oral argument on the motion for summary judgment on May 16, 1990. Upon consideration of the pleadings and oral argument, the court is prepared to rule on the pending motion.

I. BACKGROUND

Plaintiff Holloman worked for NEGAPDC from July 1, 1980 until her resignation on August 2, 1985. She was originally hired as a Fiscal Analyst for the Area Agency on Aging (AAA). In March, 1983 she also became involved with the AAA Nutrition Program as a Nutrition Specialist (the AAA administered the nutrition program). She continued with these duties until August 31, 1984 when she became the AAA Coordinator.

During the summer of 1985 plaintiff helped explore and develop new options of providing nutrition services as outlined by the State Office of Aging and required by a recent federal decision that prohibited certain federal funds from being used by an agency such as NEGAPDC to support a staff person to coordinate and assist with nutrition management. Plaintiff helped develop and draft the agreement between NEGAPDC and the Jackson County Board of Commissioners (Jackson County) whereby NEGAPDC contracted out the provision of nutrition services to Jackson County. The NEGAPDC–Jackson County contract provided that Jackson County would then subcontract for the nutrition services.

Jackson County had a competitive bidding process to determine who would be the subcontractor of the services.

Plaintiff was one of two applicants for the position of Nutrition Coordinator, the provider of nutrition services under the subcontract. She was hired for the position effective August 1, 1985 and entered into a contract (the Jackson County–Holloman contract). Defendant Lane was aware of plaintiff's proposal to Jackson County and encouraged her application; he agreed to allow Holloman to work half days at NEGAPDC while she "was already technically under contract with Jackson County." Plaintiff's Response to Defendants' Memorandum in Support of Motion Pursuant to Fed.R.Civ.P. 12(b)(6), p. 9 (hereinafter Plaintiff's Response). Plaintiff resigned from NEGAPDC August 2, 1985, effective August 16, 1985. (Holloman was pregnant with her second child at this time and gave birth in August.)

Shortly after entering into the contract with Jackson County, and the subcontract with Holloman had gone into effect, the Comptroller for NEGAPDC, Clarissa Finco, informed Lane that she felt there were financial and programmatic problems with the administration of the nutrition services contract and, more specifically, with the plaintiff's performance. Lane requested a meeting with Harold Fletcher, the Jackson County Commissioner designated to implement the contract, Holloman, and Linda Cooper, the AAA Coordinator (Cooper replaced Holloman August 5, 1985). The meeting was held October 31, 1985 in Jackson County to discuss NEGAPDC's concerns about the administration of the contract.

In November, NEGAPDC continued to perceive problems relating to expenditures and the contract budget and other programmatic issues. NEGAPDC, Commissioner Fletcher and the plaintiff held a second meeting to discuss the problems which had been reduced to memorandum form. Subsequently, NEGAPDC discovered that it could provide the services in-house and still comply with federal and state laws. On or about December 9, 1985,

NEGAPDC terminated the NEGAPDC–Jackson County contract effective December 31, 1985; Jackson County then cancelled the Jackson County–Holloman contract. Deposition of Henry D. Robinson (Chairman of the Jackson County Board of Commissioners), pp. 14–15.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has interpreted Rule 56 to mean that summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). For purposes of a motion for summary judgment, the non-movant's version of the facts must be accepted, and all disputed matters must be resolved in favor of the non-movant. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

## A. SECTION 1983 CLAIMS

██ Plaintiff claims that defendants violated her right to both procedural and substantive due process and her right of equal protection. Her employment allegedly created a property interest, and when NEGAPDC cancelled its contract with Jackson County it allegedly deprived her of property without due process of law. Specifically, plaintiff contends that she was deprived of her procedural due process rights because defendants failed to provide a pretermination hearing. Defendants violated her substantive due process rights by Lane working "a subterfuge on plaintiff with the intent of removing her from the position she held at the Commission, and to subse-

quently deprive her of the contracts with the APDC and Jackson County." Lastly, "plaintiff contends that she was subjected to the complained of treatment because of her sex." Plaintiff's Response, p. 36.

The court observes that Jackson County competitively bid out its contract for the position of Nutrition Coordinator. Defendant had no way of knowing that Jackson County would hire plaintiff. Defendants also contend that plaintiff's contract was with Jackson County and not NEGAPDC, thus no privity of contract exists which would give rise to the right of due process created by a property interest.

Plaintiff Holloman and defendant NE-GAPDC had an employment relationship from 1980 through August 1985. During the period of August through December 1985, defendants maintain that there was no employer-employee relationship between NEGAPDC and plaintiff. In the pleadings, plaintiff appears to maintain otherwise. At oral argument, however, counsel for the plaintiff argued on the assumption that plaintiff was an employee of Jackson County. Plaintiff presumably conceded that she was not an employee of NEGAPDC. She contended, however, that the relationship between NEGAPDC and Jackson County could probably be deemed a joint relationship or joint venture since discovery showed that the majority of the decision-making process occurred at NEGAPDC, and in particular, the decisions were made by defendant Lane. (This assumption is necessary for plaintiff to maintain her Title VII claims.)

If the plaintiff were not an employee of NEGAPDC, however, then she could not possibly have any property interest in employment with that agency. When asked by the court who should have given plaintiff a pretermination hearing, counsel for the plaintiff responded that NEGAPDC should have because of its conduct in the NEGAPDC–Jackson County contract. Plaintiff reasons that NEGAPDC was regulating the terms of the contract, and that Jackson County was in actuality a strawman in the contractual relationships. If the court followed plaintiff's line of reasoning, then entity $A$ contracting with entity $B$ would have to guarantee to any of $B$'s employees with property interests in employment and who worked on any matter that related to the $A$–$B$ contract all of the same rights and guarantees as $A$'s own employees with a property interest in employment. $A$ would be required to give $B$'s employee a pretermination hearing so as not to deprive the employee of any procedural and substantive due process rights.

The court finds this to be against policy and societal interests for several reasons. First, $A$ would not have any control over whether $B$'s employees had a property interest in employment. The court can foresee a situation wherein, although $A$ employs at-will employees, $B$'s employees have property rights; because $A$ has contracted with $B$, then $A$ would be liable for a violation of $B$'s employees rights if $A$ cancelled the $A$–$B$ contract. This would raise the cost of transactions and chill $A$'s interest in contracting with $B$. $B$'s employees would have potentially greater rights than $A$'s own employees, in that $B$'s employees would be entitled to sue not only their own employer, but the entity with which their employer contracted. $A$ might hesitate to cancel the $A$–$B$ contract because of its concern over a possible claim by $B$'s employees. This would change an entity's cost-benefit analysis of the advantages of contracting, resulting in a chilling effect on parties' desire to contract. The court does not believe that section 1983 was meant to extend so far as to hold $A$ liable for deprivations to $B$'s employees resulting from the cancellation of a contract between $A$ and $B$. The court finds that plaintiff was not an employee of NEGAPDC as of December 31, 1985, therefore plaintiff cannot maintain her claims for a violation of her due process rights against these defendants. Accordingly, the court GRANTS defendants' motion for summary judgment as to plaintiff's section 1983 due process claims.

■ To *assert* her equal protection claim, plaintiff needs to show that she "is a member of a protected class, was qualified for the position held, and was discharged

... while a person outside the class with equal or lesser qualifications was retained...." *Zaklama v. Mt. Sinai Medical Center*, 842 F.2d 291, 293 (11th Cir. 1988) (quoting *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982)). Linda Cooper, a person inside the class, replaced plaintiff Holloman as Coordinator of the Area Agency on Aging on August 5, 1985. Plaintiff thus would necessarily argue that the position to focus on is not the one she held when she left NEGAPDC, but her position when NEGAPDC cancelled the Jackson County contract in December 1985 —when she was Nutrition Coordinator for Jackson County.

As the court has determined above, plaintiff was not an employee of NEGAPDC, thus she was not discharged by NEGAPDC. The court finds that plaintiff is not able to meet the conditions required to assert an equal protection claim.[1] Accordingly, the court GRANTS defendants' motion for summary judgment as to plaintiff's section 1983 equal protection claim.

## B. TITLE VII CLAIMS

■ Plaintiff contends that she was an employee of NEGAPDC or Jackson County for the purposes of Title VII,[2] and that as a protected employee, the defendants interfered with her employment opportunities and privileges under the Jackson County–Holloman contract and can be held liable under Title VII.[3] The Eleventh Circuit, in *Pardazi v. Cullman Medical Center*, 838 F.2d 1155 (11th Cir.1988), held that Title VII would encompass a claim for discrimination against a plaintiff if the defendant interfered with plaintiff's employment opportunities. Before addressing the claim, however, the court must first determine whether plaintiff had an "employment relationship" with Jackson County with which NEGAPDC might have interfered.

To be able to make a Title VII claim and to determine the scope of its coverage, the parties must fall within the definitions of the statute. In *Cobb v. Sun Papers*, 673 F.2d 337 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982), the Eleventh Circuit court adopted the common-law agency test in analyzing whether plaintiff is an employee or independent contractor. "[T]he economic realities of the relationship viewed in light of the common-law principles of agency and the right of the employer to control the employee are determinative." *Cobb*, 673 F.2d at 341. If Holloman were an independent contractor, and not an agent or employee of Jackson County, then there would be no "employment relationship" between the two and she would not be subject to Title VII's protections.

The Eleventh Circuit has adopted a checklist of factors relevant to the court's consideration of this question:

1. The court thus need not consider plaintiff's claim that the reasons NEGAPDC gave for the cancellation of its contract with Jackson County are pretextual and that in actuality Mr. Lane's animosity to the plaintiff, based on her sex and pregnancy, motivated the cancellation. (The court notes that the plaintiff was pregnant when Jackson County awarded her the contract. In addition, she had already had her baby in August, and that because of health reasons it was unlikely she would become pregnant again. Plaintiff's Response, p. 5.)

2. The court has found above that plaintiff was not an employee of NEGAPDC in December 1985.

3. Plaintiff asserts that as "the contract only existed because defendant NEGAPDC wanted to continue to receive funding and provide nutrition services to the senior citizens in its area," NEGAPDC thus could affect plaintiff's employment opportunities. Moreover, defendants exercised a great deal of control over the plaintiff in her position as Nutrition Coordinator. Plaintiff's Response, p. 20. The court believes that this contention somewhat ignores the economic realities of the situation. As plaintiff testified in her deposition, NEGAPDC had been informed that the way it had been administering the program, of which plaintiff was in charge, was illegal. Plaintiff suggested alternatives to defendant Lane. She then drafted both the NEGAPDC–Jackson County contract, which subcontracted out the nutrition service, and the Jackson County–Holloman contract, wherein Jackson County contracted out the provision of nutrition services to plaintiff. Holloman deposition, pp. 51–57. Changing the way the program was handled not only brought it into compliance with the law, but altered the employment relationship between Holloman and NEGAPDC.

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated, i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays Social Security taxes; (11) the intention of the parties.

*Cobb*, 673 F.2d at 340.

The evidence regarding Holloman's status as Nutrition Coordinator—whether she was an independent contractor or an agent or an employee of Jackson County Board of Commissioners—is mixed. The intention of the parties was never made clear or discussed between Lane, NEGAPDC, the Jackson County Board of Commissioners and the plaintiff. Although plaintiff drafted the contract, she testified that she never thought of whether she was a private contractor or an employee of Jackson County Board of Commissioners. Holloman deposition, p. 59. Plaintiff also stated, however, that she thought she was going to be an employee of the Jackson County Commissioners. *Id.*

There is evidence of some confusion during the contract as to whether Holloman was on a performance contract or whether she held a salaried job.[4] In the deposition of the Jackson County Board of Commissioners, several of the questions posed by plaintiff's counsel referred to Holloman as an independent contractor; the answers incorporated that designation. Robinson Deposition, pp. 10, 11. An attorney who works for NEGAPDC represented that "It was our [NEGAPDC's] understanding with Jackson County that she was indeed an independent subcontractor, but yet monies were being withheld for FICA, which would not be paid to an independent subcontractor. She would be paying her own Social Security expenses." Deposition of James K. Reap, pp. 9–10; *see also* Deposition of Clinton R. Lane, p. 42; Holloman deposition, p. 94–95.

Plaintiff contends that the fact that FICA was withheld is evidence that she was an employee and not an independent contractor. NEGAPDC, however, had contested the withholding of FICA during the contract, and this was one of the problem areas discussed between NEGAPDC and Jackson County. In addition, after the termination of the contracts, the County paid over the withheld money to the plaintiff. Thus Jackson County, her alleged employer, did not pay Social Security taxes on Holloman's behalf. The court finds that this is not compelling evidence that Holloman was a Jackson County employee, but rather favors a finding that she was an independent contractor.

With regard to the method of payment, plaintiff was paid a salary biweekly. However, she was not paid according to the number of hours she worked. Plaintiff explained that the contract "just says that as long as I [Holloman] meet the scope of

---

4. Q.[by Clifford Adams, defendants' attorney]: Did you ever tell Clarissa Finco that you were not required to keep time records because you were on a performance contract?
A.[by Cathy Holloman]: We discussed it shortly after the contract started, and what I said was that all I needed to do was say that I had given it a hundred percent of my time, that because it was all under one title, that I was not required to keep a time sheet. We discussed it. Thereafter, I started doing a time sheet.

. . .
Q.: Now, is it your understanding that this was a salaried job or that it was a performance contract?
A.: A salaried job.
Q.: Okay. How was your performance to be measured?
A.: By monitoring through the Area Agency on Aging, same as the other contractors were carried.
Holloman deposition, pp. 68, 69.

services that is provided back here and to carry out the contract, ... they never specified exactly whether I was to work forty hours or fifty hours or twenty hours. It was never specified." Holloman deposition, p. 65.

The Holloman–Jackson County contract did not specify the exact number of hours to work or when the work should be done. Plaintiff testified, "Well, I was paid to do the job. It was not specified as to how many hours a week I was to work." Deposition of Cathy Holloman, p. 65. Plaintiff operated out of her home the entire time she was under this contract, however, defendant Lane lent her a typewriter from NEGAPDC.[5] Holloman deposition, p. 76. There is no evidence about whether annual leave was or was not afforded. Claims for in-kind expenditures from space in her home used for nutrition duties were not authorized. Travel expenses were also disallowed.[6]

The position of Nutrition Coordinator appears to be one done by a specialist without direct supervision. The Jackson County–Holloman contract contained the scope of services for which Holloman was responsible, but she was not told the details of how to perform those services. Plaintiff, however, had to submit a monthly calendar at the beginning of each month to the AAA Coordinator. While there was no direct supervision over her day-to-day activities, NEGAPDC had input into how plaintiff's job should be performed and she stayed in contact with Commissioner Fletcher. Holloman deposition, p. 85. Defendants called Jackson County to arrange meetings when they were dissatisfied with plaintiff's performance, evidence that some control was exercised over how Holloman performed her job.

An analysis of the remaining factors convinces the court that the plaintiff was an independent contractor. Of great weight is the fact that plaintiff had a written contract with Jackson County, wherein Hollo-

man is called the "CONTRACTOR." The contract contains provisions typically found in contracts involving independent contractors.

Holloman had the freedom to plan her own schedule. The time of performance clause indicates that the Contractor's [Holloman's] services "shall be undertaken and completed in such a sequence as to assure their expeditious completion in accordance with the purposes of this Contract; but in any event, all of the services as specified in the Scope of Services shall be completed on or before June 30, 1986." Jackson County–Holloman contract, ¶ III. The relationship between Jackson County and Holloman would have been terminated after one year unless the parties renewed or extended the contract.

The clause regarding Termination of Contract specifies that:

> If, through any cause, the CONTRACTOR shall fail to fulfill in a timely and proper manner, its obligation under this Contract, or if the CONTRACTOR shall violate any of the covenants, agreements or stipulations of the Contract, or if the grant from the Georgia Department of Human Resources is terminated, or if the authority to continue such a contract is terminated by the Department of Human Resources, the COMMISSIONERs shall thereupon have the right to terminate the Contract by giving written notice to the CONTRACTOR of such termination, thirty (30) days in advance of termination."

Jackson County–Holloman contract, ¶ V. Jackson County terminated the Jackson County–Holloman contract after NEGAPDC cancelled the NEGAPDC–Jackson County contract and there was no money for Jackson County to carry on the program. Jackson County gave the plaintiff notice (although less than thirty days) and explained the reasons for cancelling the

---

5. There were plans that plaintiff would have her own office if Jackson County got more office space.

6. Plaintiff selected which conferences to attend, although NEGAPDC later provided guidelines as to the type of conferences plaintiff should attend.

**1578**

contract.[7]

Providing nutrition services is not an integral part of the business of Jackson County. Jackson County contracted with NEGAPDC to help the ten-county area and provide part of the aging program of NEGAPDC. The County had not provided these services any time immediately preceding entering into the contract with NEGAPDC; the cancellation of the NEGAPDC–Jackson County contract did not greatly impair the functioning of the County's daily business. The County expressed concern only about finding plaintiff placement in suitable employment. Jackson County did not spend any County money on the program. Deposition of Henry D. Robinson, pp. 10–11.

On the totality of the evidence, the court finds that the plaintiff was an independent contractor. The relationship between plaintiff and Jackson County is thus not one of employment for Title VII purposes. The court declines to extend the *Pardazi* decision in a case in which the claimant has not demonstrated an employer-employee relationship at all. *Pardazi*, 838 F.2d at 1157 n. 4. The court finds that plaintiff does not state a claim for relief under Title VII for discrimination against defendants for interfering with plaintiff's independent contractor relationship with another employer (Jackson County). Accordingly, the court GRANTS defendants' motion for summary judgment as to plaintiff's Title VII claim.

### III. CONCLUSION

For the reasons stated above, the court hereby GRANTS defendants' motion for summary judgment as the court finds that there are no issues of material fact and defendants are entitled to judgment as a matter of law.

SO ORDERED.

---

**7.** While Jackson County may not have strictly followed the contract, there is no claim for breach of contract, or any claim, against Jackson County. The court will thus not consider any issue regarding the termination of the contract beyond how the clause and the termination bear on a finding of whether plaintiff was an independent contractor or an employee of Jackson County.