**Square COBB, Plaintiff-Appellant,**

v.

**SUN PAPERS, INC., Defendant-Appellee.**

No. 80–7955.

United States Court of Appeals,
Eleventh Circuit.

April 12, 1982.

Rehearing and Rehearing En Banc
Denied June 10, 1982.

338

Allan Kanner, Philadelphia, Pa. (Court-appointed), for plaintiff-appellant.

William C. Wood, Jr., Birmingham, Ala., for defendant-appellee.

Before RONEY and FAY, Circuit Judges, and EDENFIELD *, District Judge.

RONEY, Circuit Judge:

Plaintiff Square Cobb appeals the dismissal of his action alleging race discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* The district court found Cobb was an independent contractor and hence not protected by Title VII. The two issues on appeal are whether the district court used the proper test to determine whether plaintiff was an employee or an independent contractor, and if so, whether the correct finding was made under that test. Holding the district court right on both issues, we affirm.

### Background

Square Cobb worked at Sun Papers, Inc. as a janitor/custodian for approximately six months from May 1977 until November 24, 1977, when he was terminated. He filed a Title VII action on August 17, 1979. The action was dismissed by the district court on October 23, 1979. On appeal the Fifth Circuit vacated that dismissal order on July 28, 1980 and remanded the case for an evidentiary hearing.

On remand, the district court held a hearing pursuant to Rule 42(b), Fed.R.Civ.P., on the severed issue of plaintiff's status as employee or independent contractor. The court made a number of findings of fact, some of which supported the view that plaintiff was an employee of Sun Papers,

---

* The Honorable Newell Edenfield, United States District Judge for the Northern District of Georgia, sitting by designation. This case is being decided by a quorum due to the death of Judge Edenfield on December 27, 1981. 28 U.S.C. § 46(d).

and others which indicated he was an independent contractor. In its conclusions of law the court applied the common law approach for determining employee/independent contractor status, found that Cobb was an independent contractor, and held that he was not subject to Title VII's protections.

### The Test

On appeal, plaintiff argues that the trial court erroneously applied the common law test of employee status. He urges the Court to adopt the approach used in *Mednick v. Albert Enterprises, Inc.*, 508 F.2d 297, 299–300 (5th Cir. 1975), which applied an "economic realities test" under which persons are considered employees if they "are dependent upon the business to which they render service." *Mednick, supra,* quoting *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947). Although *Mednick* was a case under the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et seq.*, plaintiff argues the statement made in *Mednick* that "[t]he terms 'independent contractor,' 'employee,' and 'employer' are not to be construed in their common law senses when used in federal social welfare legislation," 508 F.2d at 299, supports the proposition that this Court should apply an equally expansive definition to the term "employee" in cases under Title VII.

Defendant Sun Papers asserts the district court was correct in following the decision in *Smith v. Dutra Trucking Co.*, 410 F.Supp. 513 (N.D.Cal.1976), *aff'd mem.*, 580 F.2d 1054 (9th Cir. 1978), which specifically rejected the *Mednick* approach in a Title VII case and held that while "Title VII is not to be construed narrowly, there is nothing in the legislative history of the Act to indicate a Congressional intent to construe the term 'employee' in any manner other than in accordance with common-law agency principles." 410 F.Supp. at 516. This traditional test for distinguishing between employees and independent contractors is described as the " 'right to control' reserved by the per-

son for whom the work is being done, 'not only as to the result accomplished by the work, but also as to the details and means by which that result is accomplished.' " *Id.* (citation omitted).

This Court has held that employee status under Title VII is a question of federal law, "to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir. 1981).[1] The Court has not yet decided, however, whether federal law requires a common law test of employee/independent contractor status or an economic realities test.

Title VII defines "employee" to mean "an individual employed by an employer ...." 42 U.S.C.A. § 2000e(f). There is no further elaboration in the statute, nor is there any evidence in the legislative history as to how expansively that definition is meant to be read. From this, the Court may well assume that Congress intended the term "employee" to be given its common, everyday meaning, because "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison v. Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944).

Federal case law on this question is somewhat unclear. Some courts have applied the common law principles spoken of in *Dutra Trucking. See, e.g., Takeall v. Werd, Inc.*, 23 FEP 947 (M.D.Fla.1979); *Dumas v. Town of Mt. Vernon*, 436 F.Supp. 866 (S.D. Ala.1977), *modified on other grounds*, 612 F.2d 974 (5th Cir. 1980). *See also Gutierrez v. Aero Mayflower Transit Co.*, 22 FEP 447 (N.D.Cal.1979). Others have attempted to give a more "liberal" construction to the term "employee" under Title VII. *See Unger v. Consolidated Foods Corp.*, 657 F.2d 909 (7th Cir. 1981). Some courts, although

1. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit.

suggesting an economic realities test, have merely followed a common law type of analysis in which the employer's right to control the employee is the most important factor rather than the determinative factor. As the D. C. Circuit explained in *Spirides v. Reinhardt*, 613 F.2d 826 (D.C.Cir.1979), when it articulated a test requiring an analysis of the economic realities of the work relationship:

> This test calls for application of general principles of the law of agency to undisputed or established facts. Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here, as it is at common law .... If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.

613 F.2d at 831–32. The court then went on to list additional factors which are relevant to the consideration of this issue:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; *i.e.*, by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 832. This approach has been adopted by the Ninth Circuit which affirmed the district court's ruling in *Dutra Trucking*. *See Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 n.5 (9th Cir. 1980).

No court has ever given as expansive an interpretation of the term "employee" in a Title VII case as that given in *Mednick*. The Ninth Circuit which rejected the *Mednick* approach to Title VII cases for a "common law/economic realities" approach, has cited *Mednick* for support on the employee/independent contractor question in cases under the Fair Labor Standards Act. *See Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371 (9th Cir. 1981); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755 (9th Cir. 1979).

The reason for this reluctance of the courts to go as far as *Mednick* in the Title VII area is that there is no statement in the Act or legislative history of Title VII comparable to one made by Senator Hugo Black (later Justice Black), during the debates on the Fair Labor Standards Act, that the term "employee" in the FLSA was given "the broadest definition that has ever been included in any one act." 81 Cong.Rec. 7657, *quoted in United States v. Rosenwasser*, 323 U.S. 360, 363 n.3, 65 S.Ct. 295, 296 n.3, 89 L.Ed. 301 (1945). As one court has stated:

> Employment must be distinguished from the independent contractual associations of business entities for the latter are not covered by Title VII. While it would be a desirable goal to eliminate racial discrimination in all business enterprises, it does not appear that Congress intended such a broad objective for Title VII. The emphasis on the word "employment" in the legislative history supports such a conclusion.

*Mathis v. Standard Brands Chemical Industries*, 10 FEP 295, 297 (N.D.Ga.1975).

We find no indication that Congress intended the words of the statute to have anything but their ordinary meaning as commonly understood. Absent guidance from the Supreme Court, we conclude therefore that the term "employee" in cases

under Title VII is to be construed in light of general common law concepts. The analysis of the question in a given case should take into account the economic realities of the situation in the manner done in *Spirides* and *Lutcher.* This does not mean, however, that the economic realities with respect to the dependence of the individual on the employment will control. Rather, it is the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative. Whether it would be desirable to import the *Mednick* "dependence test" into the Title VII area, or to include all independent contractors within Title VII coverage for that matter, is a decision for Congress, not the court.

The district court employed the correct common law analysis in deciding the question of whether plaintiff was an employee or an independent contractor.

### Employee/Independent Contractor

■ Plaintiff argues that even under the common law test, the district court erred in concluding that plaintiff was an independent contractor. A review of the record reveals, however, that the choice of tests controls the outcome of this case. Whether the district court's decision is to be reviewed as a finding of fact, a finding of "ultimate fact," a mixed question of law and fact, or a conclusion of law, we perceive no reversible error. *See Bickel v. Burkhart,* 632 F.2d 1251, 1255 n.7 (5th Cir. 1980).

The court found that the evidence on the question was "mixed." The following facts were found in favor of a determination that appellant was an employee: (1) There was some direction given by the defendant as to certain details of the work to be done; (2) the basic materials and tools used in the work were paid for and furnished by the defendant; (3) there was no written contract with provisions typically found in contracts involving independent contractors; (4) the firm that replaced plaintiff, Associated Cleaning, had a contract in writing that clearly delineated an independent con-

tractor relationship with Sun Papers; and (5) plaintiff did not report his payments from Sun Papers as business income on his 1977 tax returns.

On the other hand, the district court set out basic findings of fact that pointed to a conclusion that plaintiff was an independent contractor:

Among these items would be the fact that Mr. Cobb was not given the exact number of hours that work was to be performed, that rather he was told what work was to be accomplished in the way of cleaning, that he was not told the details of how to perform that job, or by whom it was to be performed, whether by a single individual or by a group of individuals, that the criterion used by the Defendant in connection with this relationship was the quality of the work ultimately performed, that the Defendant did not care and have concern as to who was performing the work, and indeed was aware that Mr. Cobb was having the work performed not only by himself but by other persons. And notwithstanding that, the Defendant did not pay those other persons any amounts of money, looking to Mr. Cobb to handle any such details, including any taxes that might be due to be withheld, that it treated Mr. Cobb as an independent contractor in its accounting materials, paying him on the basis of an accounts payable ledger and not paying him in the way that employees of the company were being paid, that it did not withhold any amounts for taxes, Social Security, or unemployment compensation or the like from the amounts paid to Mr. Cobb, as would have been the case had it treated him as an employee.

That it at the outset of the relationship had discussed through its chairman, Mr. Cook, that it would be up to Mr. Cobb to determine how the work was to be performed, and to be a contractor for this matter, and that indeed after the severance of the relationship with Mr. Cobb it had a similar relationship with Cobb's successor, and that there was a conversa-

tion between Mr. Cobb and the comptroller of the company about the first two weeks or so of this relationship in which it was affirmed that Mr. Cobb was to be and was being treated as an independent contractor, that amounts were not being withheld from payments to him, that taxes were to be accounted for by him, including any withholding of taxes for those who were employed by Mr. Cobb.

The "most critical fact" to the district court was

that Mr. Cobb had this work performed not only by himself but by his wife, at times by his son, and by at least one other person on a regular basis, and that there was no approval by the Defendant of this relationship as such. They had nothing to do with having those persons being employed to do this work, and that their sole interest was in the work product itself, not how it was being done.

The court concluded there was no "supervision" of how the work was to be done and that the direction given was a "typical" way of dealing with an independent contractor.

Finally, the court found that plaintiff in the original presentation of this case in his complaint described himself as self-employed, that he did after this relationship perform and provide janitorial services to at least two other companies, doing so on much the same basis, which I take it to mean that the work was being performed not only by himself but by others, including his wife, but with only himself being paid for the product of those services.

After making these findings the district court, using a common law analysis, held that, on balance, the "totality of the evidence" favored a finding that plaintiff was an independent contractor.

Plaintiff argues the common law analysis of the court did not apply the economic realities orientation of the kind set out in *Spirides* and *Lutcher*. It is clear, however, that the district court went beyond the simple right to control issues and weighed all the factors involved in the situation in making its determination. We must affirm this decision of the trial court.

AFFIRMED.