Rex FRONDUTI, Plaintiff,

v.

TRINITY INDUSTRIES,
et al., Defendants.

Civ. No. 95–D–600–N.

United States District Court,
M.D. Alabama,
Northern Division.

May 28, 1996.

Julian L. McPhillips, Jr., Allen R. Stoner, McPhillips, Shinbaum, Gill & Stoner, Montgomery, AL, for plaintiff.

David M. Curtis, Shawn A. Orme, Lori M. McNally, Gardere & Wynne, L.L.P., Dallas, TX, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendant Trinity Industries, Inc.'s motion for summary judgment, filed August 22, 1995.[1] The plaintiff responded in opposition on November 21, 1995, to which defendant Trinity Industries, Inc. replied on January 10, 1996. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendant's motion is due to be granted.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered

---

1. The court notes that the motion is entitled "Motion for Partial Summary Judgment." However, the plaintiff has stated in his motion to stay the scheduling order, filed January 12, 1996, that a resolution of the motion in favor of defendant Trinity Industries, Inc. will be dispositive of all issues in the case. In fact, after reviewing the record as a whole, the court agrees with the plaintiff that defendant Trinity Industries, Inc.'s motion is not partial; rather, depending on the outcome, the motion may be dispositive of the entire case.

on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Rex Fronduti, commenced this action on May 5, 1995, alleging age discrimination and retaliatory discharge for his filing of a charge of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* Thereafter, defendant Trinity Industries, Inc. ("Trinity") filed its motion for summary judgment contending that (1) Mr. Fronduti's claim of age discrimination is barred by the applicable statute of limitations and (2) at the time of the alleged retaliation, Mr. Fronduti was not an employee of Trinity and consequently was not protected by the ADEA.

In his response to summary judgment, Mr. Fronduti does not dispute that: (1) the charge of discrimination was not filed with the Equal Employment Opportunity Commission ("EEOC") until January 30, 1995; (2) all allegedly discriminatory acts prior to August 3, 1994 are time barred; and (3) the only act of discrimination complained of in this case is the alleged refusal to reinstate Mr. Fronduti to his former position in September, 1994.[2] Both parties also agree that

---

2. "It is on the basis of the rejection by Defendants of Plaintiff's request for reemployment to

his former position of Vice President of Operations in the Bridge Division in September 1994,

the only issue for the court to determine with respect to timeliness is whether Mr. Fronduti's September, 1994 request for rehire is a new and discrete act of discrimination under the ADEA.

## DISCUSSION

### I. ADEA Time–Bar

 Under the ADEA, Mr. Fronduti was required to file a charge of discrimination with the EEOC within 180 days after his claims accrued. 29 U.S.C. § 626(d).[3] This time period is to be treated as a statute of limitations for all purposes. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982); *Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023, 1025 (11th Cir.1994) (citing *Stafford v. Muscogee County Bd. of Educ.*, 688 F.2d 1383, 1387 (11th Cir.1982)). This limitations period begins to run when the alleged discriminatory acts occur, not when a plaintiff allegedly feels their effects. *See Chardon v. Fernandez*, 454 U.S. 6, 8–9, 102 S.Ct. 28, 29–30, 70 L.Ed.2d 6 (1981); *see also Delaware State College v. Ricks*, 449 U.S. 250, 258–59, 101 S.Ct. 498, 504–05, 66 L.Ed.2d 431 (1980). The discriminatory act for the purposes of limitations is the notice to the employee of an adverse employment decision, not the later execution of that decision. *See Chardon*, 454 U.S. at 8–9, 102 S.Ct. at 29–30 (for limitations purposes, the discriminatory act is the decision to terminate, not the termination itself); *see also Ricks*, 449 U.S. at 258–59, 101 S.Ct. at 504–05 (decision not to offer tenure was the discriminatory act and termination the effect of that decision). Therefore, in this case, the alleged discriminatory acts occurred when Mr. Fronduti first received unequivocal notification of the adverse employment decision about which he is complaining.

It is undisputed that on January 30, 1995, Mr. Fronduti filed his "Notice of Charge of Age Discrimination" with the EEOC. *See* Def.'s Ex. B. As such and in accordance with the foregoing, the court finds, as agreed by both parties, that all acts which occurred prior to August 3, 1994, are time-barred as a matter of law.

The court will next turn to the sole issue remaining with respect to timeliness; that is, whether Mr. Fronduti's September, 1994 request for reemployment to his former position as Vice President of Operations in the Bridge Division constitutes a new and discrete act of discrimination in violation of the ADEA so as to fall within the 180 day-limitation.

In *Burnam v. Amoco Container Co.*, 755 F.2d 893 (11th Cir.1985), the plaintiff was discharged and then reapplied for the same position. The Eleventh Circuit held that absent a new and discrete act of discrimination in the refusal to rehire itself, a simple request for reinstatement "seeks to redress the original termination." *Id.* at 894. The court reasoned that "[o]therwise, a potential plaintiff could always circumvent the limitations by reapplying for employment." *Id.; see also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648 (11th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994).

In addition, in a case factually similar to the instant case, the Ninth Circuit held that a discharged employee who seeks to be reinstated is really litigating the unfairness of the original discharge. *Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975). Therein, the plaintiff was discriminatorily discharged from her employment with United Air Lines in 1976. Three years later, she requested to be reinstated to her former position as a stewardess and was denied. The court held that the denial of reinstatement was not a new and separate discriminatory act because a request for reinstatement "seeks to redress the original termination." *Id.*

that Plaintiff makes his complaint for age discrimination." Pl.'s Resp. at 9.

**3.** The ADEA provides a plaintiff 180 days in which to file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(2). This deadline is extended to 300 days in states which have a law prohibiting discrimination in employment on the basis of age and an agency responsible for seeking relief from such discriminatory practices. 29 U.S.C. § 633(b). Alabama does not have a such a state agency or a qualifying statute. Thus, the limitations period in Alabama is 180 days.

■ Similarly here, the court finds that Mr. Fronduti is simply trying to redress his initial termination.[4] A common sense reading of Mr. Fronduti's complaint and his affidavits lead to the sole conclusion that he is seeking placement into his former position. In addition, the court finds that there is no evidence of a new and discriminatory act concerning the failure to reinstate in September, 1994. *See* Def.'s Reply at 4–5. Consequently, the court finds that the denial of reinstatement in September, 1994 does not renew the 180–day period for filing a charge of discrimination. Accordingly, Trinity's motion for summary judgment is due to be granted concerning Mr. Fronduti's claims of age discrimination.

## II. "Employee" Under the ADEA

Notwithstanding the foregoing, the court will next address whether Mr. Fronduti was an "employee" under the ADEA. If the answer is in the negative, Mr. Fronduti's claims occurring after December 8, 1993 must fail even if timely.

Trinity contends that Mr. Fronduti was no longer its "employee," and therefore, no longer protected by the ADEA. Consequently, Trinity asserts that it could not have violated the ADEA with respect to Mr. Fronduti. In support thereof, Trinity contends that as of December 8, 1993, Mr. Fronduti and Trinity entered into an independent contractor relationship. On the other hand, Mr. Fronduti contends that the totality of the circumstances surrounding his duties after January 1, 1994, demonstrate that he was an employee of Trinity at the time he was notified in March, 1995 that his consulting services were not needed any longer. Thus, Mr. Fronduti asserts that he does have standing under the ADEA to file a claim of discrimination on the basis of retaliation with the EEOC and is not barred from pursuing this action.

■ The ADEA prohibits employers from discriminating on the basis of age against their employees. 29 U.S.C. §§ 623(a). The ADEA merely defines an employee as "an individual employed by any employer." 29 U.S.C. § 630(f). Due to the vagueness of this definition, it has been left to the courts to apply this definition to the specific facts of each case. The coverage of the ADEA does not extend to protect independent contractors. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502 (2d Cir. 1994); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982). Therefore, if the court finds that Mr. Fronduti was an independent contractor as alleged by Trinity, the ADEA is inapplicable and Trinity's motion for summary judgment is due to be granted concerning any claims occurring after December 8, 1993.

Courts faced with the issue of whether an individual is an employee or an independent contractor have employed a variety of tests. Some have applied the restrictive "traditional common law test of agency, turning on the employer's right to control." *Mares v. Marsh,* 777 F.2d 1066, 1067 (5th Cir.1985). Others have applied a far more liberal "economic realities" test which focuses on whether the individual is financially dependent on the employer. *Hickey v. Arkla Industries, Inc.,* 699 F.2d 748, 751 (5th Cir.1983).[5]

The majority of courts, however, have settled on a test which is a hybrid of the right to control and economic realities tests. *See, e.g., Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982); *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498 (5th Cir.1994); *Deal v. State Farm County Mut. Ins. Co. of Texas,* 5 F.3d 117 (5th Cir.1993); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211 (4th Cir.1993); *Wilde v.*

---

**4.** The court notes that it is not persuaded by the plaintiff's attempt to distinguish the applicable case law by arguing that the plaintiffs in those cases did not apply for an "open position" as the plaintiff here allegedly did. The court finds that whether the position in which a plaintiff seeks reemployment is "open" is irrelevant. In fact, the plaintiff cites no authority making such a distinction, and moreover, the cases relied on herein do not make such a distinction.

**5.** This test has been criticized as being too broad for purposes of interpreting federal anti-discrimination laws. *See, e.g., Wilde v. County of Kandiyohi,* 15 F.3d 103 (8th Cir.1994).

*County of Kandiyohi*, 15 F.3d 103 (8th Cir. 1994).

In *Cobb*, the Eleventh Circuit adopted the "hybrid" test and stated that:

[W]e conclude therefore that the term "employee" in cases under Title VII is to be construed in light of common-law concepts. The analysis of the question in a given case should take into account the economic realities of the situation.... This does not mean, however, that the economic realities with respect to the dependence of the individual on the employment will control. Rather, it is the economic realities viewed in light of the common law principles of agency and the right of the employer to control the employee that are determinative.

673 F.2d at 340–41. The *Cobb* court also set forth numerous factors, other than the right to control, to guide a court's determination: (1) the kind of occupation, specifically whether the work is usually performed under the direction of a supervisor; (2) the skill required to perform the particular occupation; (3) whether the "employer" or the individual furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by the job; (6) whether one or both parties have the right to terminate the relationship with or without notice; (7) whether leave or vacation is afforded; (8) whether the work is an integral part of the "employer's" business; (9) whether the individual accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Id.* at 340.

■ The following facts are favorable to a finding that Mr. Fronduti was an independent contractor. Mr. Fronduti was engaged by Trinity as a consultant on December 8, 1993. As a result of the consulting agreement, Trinity no longer exercised control over the manner and means of Mr. Fronduti's work. John Sanford Aff. at ¶ 4 (Def.'s Ex. C). After the agreement was executed, Mr. Fronduti devoted one-half of his time each month to performing consulting work requested by Trinity. *Id.* Trinity did not supervise Mr. Fronduti in the execution of these consulting tasks. *Id.* Rather, Trinity would communicate the task to Mr. Fronduti and he was then free to accomplish the task in whatever manner he saw fit. *Id.*

Trinity did not withhold taxes from payments to Mr. Fronduti under the contract. *Id.* at ¶ 5. Trinity paid Mr. Fronduti in a lump sum and reported the income to him on a Form 1099. *Id.* While employed as a consultant, Mr. Fronduti did not accrue any vacation or leave time and did not earn any pension, medical or other benefit of any kind. *Id.* Trinity did not set any rules or dictate any of the details of the day-to-day terms or conditions of Mr. Fronduti's consulting work. *Id.* Finally, while not dispositive of the issue, the contract itself evidences that the parties intended the arrangement to be an independent contractor relationship rather than an employer/employee relationship. *See* Consulting Agreement at ¶ 7 (Pl.'s Ex. 2).

On the other hand, the following facts tip in favor of the determination that Mr. Fronduti was an employee. The relationship between Mr. Fronduti and Trinity was to last two years and he was paid on a monthly basis at $3,000.00. *See* Consulting Agreement (Def.'s Ex. A; Pl.'s Ex. 2). Furthermore, he was forbidden to produce any similar consulting work for other businesses during the two years and for a period of twelve months thereafter. *Id.* Moreover, he was in essence performing the same duties he had performed when employed by Trinity, with the exception of administrative duties and authority to hire and fire. Pl.'s Ex. 3. In addition, he was also reimbursed for the cost of his major medical insurance coverage equivalent to the coverage provided by Trinity's existing health insurance plans.[6] Finally, Mr. Fronduti contends that

---

**6.** This assertion was not supported by a citation to the record or evidence. As such, the court notes that self-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists. *Soles v. Board of Commissioners*, 746 F.Supp. 106, 110 (S.D.Ga. 1990) (citing *Sims v. Mack Truck Corp.*, 488 F.Supp. 592 (E.D.Pa.), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Tunnell*

he was compelled to accept the label "independent contractor" or lose his employment completely. Pl.'s Ex. 3 at ¶ 8.

The court finds that the evidence presented herein reflects a typical way of dealing with an independent contractor rather than an employee. The court is most persuaded by the lack of supervision and the method the work was directed by Trinity to Mr. Fronduti. The evidence reveals that Trinity exercised no control over Mr. Fronduti's accomplishment of the consulting tasks assigned to him. In other words, Trinity's sole interest seems to be in the work product itself and not in how it was being done. *See Cobb,* 673 F.2d at 342 (similar finding). In sum, after reviewing the evidence and the Consulting Agreement, the court finds that the "totality of the evidence" favors a finding that Mr. Fronduti was an independent contractor. Accordingly, Trinity's motion for summary judgment is due to be granted as to all claims occurring after December 8, 1993.

## CONCLUSION

In accordance with the foregoing discussion and analysis, the court finds that Defendant Trinity Industries, Inc.'s motion for summary judgment is due to be granted. The granting of this motion is dispositive of the entire case. Hence, a judgment in accordance with this memorandum opinion will be entered separately.

*v. Wiley,* 514 F.2d 971 (3d Cir.1975)). However, this assertion, even if considered by the court, does not alter the court's findings set forth herein.