[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13698
_____

D.C. Docket No. 2:13-cv-00036-JES-DNF


PAMELA M. PERRY, M.D.,

Plaintiff-Appellant,

versus

THE SCHUMACHER GROUP OF LOUISIANA,
a Louisiana corporation,
THE SCHUMACHER GROUP OF FLORIDA, INC.,
a Florida corporation,

Defendants-Appellees,


COLLIER EMERGENCY GROUP, LLC,
a Florida limited liability company,

Defendant-Cross Defendant- Cross Claimant-Appellee,

HEALTH MANAGEMENT ASSOCIATES, INC.,
a Florida corporation,

Defendant-Cross Claimant-Appellee,

HEALTH MANAGEMENT ASSOCIATES, INC.,

a Michigan Corporation,

                                                        Defendant-Appellee,

NAPLES HMA, LLC,
a Florida limited liability company,

                    Defendant-Cross Claimant-Cross Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 7, 2020)

Before WILSON and GRANT, Circuit Judges, and HINKLE,* District Judge.

WILSON, Circuit Judge:

     This case arises out of Dr. Pamela Perry's work as an emergency room

Medical Director and doctor at a hospital in Florida, the alleged race- and gender-

based discrimination she suffered, and her allegedly unlawful termination.  Dr.

Perry appeals four district court orders disposing of several claims that she brought

against the entities that provided healthcare staffing services (collectively, TSG)[1]

and the company (Naples HMA) that operated the hospital (Pine Ridge) at which

she worked.  Her appeal raises these questions: whether a genuine issue of material

---

* Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida,
sitting by designation.
[1] For ease of reference, we refer collectively to The Schumacher Group entities and Collier
Emergency Group as "TSG;" we need not distinguish among them to decide the issues on
appeal.  They shared counsel and litigation positions.

2

fact exists as to her employment status for purposes of Title VII; whether a failure to investigate can constitute evidence of discrimination under 42 U.S.C. § 1981; and whether Dr. Perry stated common-law claims for negligence, breach of contract, and breach of implied duty of good faith and fair dealing against TSG. To each of these questions, the district court answered "no." We agree with the district court on the common-law issues but disagree on the Title VII and § 1981 issues. We thus affirm the district court's dismissal of the common-law claims, reverse its grants of summary judgment and judgment as a matter of law on the Title VII claims, and vacate its judgment as to the § 1981 claim.

I.

The relevant facts are these. TSG was in the business of contracting with and then placing doctors at Florida hospitals. To this end, TSG entered into an Exclusive Agreement with Naples HMA, who operated Pine Ridge.[2]

By all accounts, Dr. Perry, an African American woman, came to Florida as an exceptionally well-qualified doctor. TSG offered her to Naples HMA as a candidate for a position as Medical Director of Pine Ridge's emergency department. Naples HMA approved her for the position. TSG offered Dr. Perry the position, and she accepted. To set the terms of their relationship, TSG and Dr.

---

[2] We note, though, that defendant Collier contracted with both Naples HMA and Dr. Perry.

Perry entered into a Business Associate Agreement, Physician Agreement, and Medical Director Agreement.

Dr. Perry began work at Pine Ridge in the Summer of 2011 and did well. Meanwhile, at another Naples HMA hospital, the Medical Director Dr. Childress— a Caucasian male—struggled for months in his role but was allowed time to improve and did so.

Over time, Dr. Perry suspected that certain Pine Ridge staff members mistreated her because of her race and sex.  Specifically, she believed that, because of racial animus, several nurses in the Emergency Department undermined her authority and acted unprofessionally towards her.  On March 7, 2012,  Dr. Perry was invited to a meeting with two TSG officers where she was told that a Pine Ridge staff member alleged problems with her performance.  Dr. Perry disputed any performance problems.  A few weeks later, on March 22, 2012 Dr. Perry told TSG officers—for the first time—that she believed the nursing staff at Pine Ridge was discriminating against her on the basis of her race.  Shortly after this meeting, when a TSG officer asked Dr. Perry for sources of information contributing to her suspicions of bias, Dr. Perry refused to provide any names.  TSG did not investigate Dr. Perry's allegations.

Just a few days after she raised her concerns about racial discrimination, Naples HMA requested that TSG remove Dr. Perry as the Medical Director of Pine

Ridge, as the Exclusive Agreement permitted Naples HMA to do.  So in April 2012, TSG gave Dr. Perry 60 days' notice.  But Dr. Perry only worked at Pine Ridge until May 22, 2012.

In January 2013, Dr. Perry filed suit against TSG and Naples HMA, seeking compensatory damages, punitive damages, injunctive relief, and attorney's fees. Her claims included ones for disparate treatment discrimination based on race and gender and retaliation under Title VII against TSG and Naples HMA; racial discrimination under § 1981 against TSG and Naples HMA; and common-law negligence, breach of contract, and breach of the implied duty of good faith and fair dealing against TSG.

TSG moved to dismiss the common-law claims for failure to state a claim. The district court granted TSG's motion and dismissed those claims.

TSG also moved for summary judgment on the Title VII claims and the § 1981 claim.  The district court granted summary judgment for TSG.  It found that Dr. Perry was an independent contractor, not an employee under Title VII, and thus did not enjoy that statute's protections.  Upon reconsideration, the district court reaffirmed its grant of summary judgment but clarified its reasoning as to the § 1981 claim against TSG.

Naples HMA separately moved for judgment as a matter of law on Dr. Perry's Title VII claims.  Relying entirely on its previous ruling for TSG as to Dr.

Perry's employment status, the district court granted judgment as a matter of law for Naples HMA on those Title VII claims too.

All that remained was a § 1981 claim against Naples HMA. Dr. Perry tried to appeal, but we dismissed the appeal on jurisdictional grounds. On remand, Dr. Perry moved to voluntarily dismiss the remaining § 1981 claim against Naples HMA and for an entry of final judgment. The district court declined, holding that it lacked jurisdiction over the case. Perry appealed once again, and we reversed the district court's decision. In that second appeal, we advised Dr. Perry how to appeal successfully: seek leave to amend the complaint under Rule 15 to eliminate the § 1981 claim against Naples HMA. *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018). Dr. Perry did so. She omitted her § 1981 claims in the Fifth Amended Complaint. The district court incorporated its prior orders and entered judgment for TSG and Naples HMA.

We review a grant of summary judgment de novo, applying the same standard as the district court. *Williamson v. Brevard Cty.*, 928 F.3d 1296, 1304 (11th Cir. 2019). We do not "weigh the evidence and determine the truth of the matter but [rather] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

6

law."). To determine that, we view the evidence in the light most favorable to Dr. Perry as the nonmoving party and draw all reasonable inferences in her favor. *See Williamson*, 928 F.3d at 1304. If reasonable minds could differ as to a material factual issue, then summary judgment is improper. *See Anderson*, 477 U.S. at 249–51.

The standard is nearly identical for reviewing judgment as a matter of law. *See Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019). Judgment as a matter of law is proper if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In other words, it is "appropriate only if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Taylor*, 940 F.3d at 591.

We review de novo a district court's order granting a motion to dismiss for failure to state a claim. *EEOC v. STME, LLC*, 938 F.3d 1305, 1313 (11th Cir. 2019). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation mark omitted). "A claim is facially plausible when the plaintiff pleads sufficient facts to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *STME, LLC*, 938 F.3d at 1313.

II.

A.

Title VII of the Civil Rights Act of 1964 prohibits discrimination against "any individual" with respect to that individual's terms and conditions of employment because of race or sex. 42 U.S.C. § 2000e-2(a). "The statute does not define 'any individual,' and although we could read the term literally," we don't. *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). Title VII does not protect everyone; Congress enacted Title VII to regulate only "specific employment relationships." *Id.* at 1243. "We can assume that Congress . . . meant to limit the pool of potential plaintiffs under Title VII." *Id.* Only "employees" may bring a Title VII suit. *Id.* at 1242.

Title VII defines "employee" circularly: an employee is "an individual employed by an employer." 42 U.S.C. § 2000e(f). Based on this definition, we have assumed that "employee" should take its "common, everyday meaning." *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 339 (11th Cir. 1982).

"[E]mployee status under Title VII is a question of federal law." *Id.* To determine employment status, we have a hybrid-economic-realities test, examining "the economic realities of the relationship viewed in light of the common law principles of agency and the right of the employer to control the employee." *Id.* at 341. Genuine disputes of material fact regarding a hiring party's right to control or

8

degree of control over the manner and means of performance preclude summary judgment or judgment as a matter of law. *See, e.g.*, *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266–67 (11th Cir. 1997) (considering the same employment-status question in the ADEA context); *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1492–93 (11th Cir. 1993) (considering the same in the ERISA context); *Pitts v. Shell Oil Co.*, 463 F.2d 331, 333–36 (5th Cir. 1972) (considering the same in a common-law context).[3]

Here, the district court found no genuine dispute of material fact regarding Dr. Perry's employment status for purposes of Title VII.  It outlined various common-law factors, analyzed whether each indicated employee- or independent-contractor status, and tallied and weighed them.  As a matter of law, it concluded, Dr. Pamela Perry was an independent contractor, not an employee.  Based on that finding, the court granted summary judgment for TSG and judgment as a matter of law for Naples HMA on Dr. Perry's Title VII claims against them, respectively.

This was error.  The district court's summary judgment order implicitly acknowledged a genuine dispute as to control when it concluded that "the undisputed evidence establishes that [TSG] did not exercise *sufficient* control over Dr. Perry's day-to-day affairs."  (emphasis added).  The district court improperly

---

[3] In *Bonner v. City of Prichard*, we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

resolved disputes about whether certain provisions in the agreements indicated that TSG had a right to control Dr. Perry and, if so, the degree of control for which they allowed.  And the district court improperly credited the agreements' labels and surface-level characterization of the relationship and the amount of control to be exercised, as opposed to examining the agreements' substantive terms.  *See Daughtrey*, 3 F.3d at 1492–93 (reminding that courts must assess and weigh all aspects of the parties' relationship, not just characterizations or labels in agreements).

Contrary to the district court's conclusion, the record reflects several disputes about TSG's control over Dr. Perry.  For example, the parties dispute whether certain provisions of the agreements constrained Dr. Perry's ability to perform services for any other business while she worked with TSG.  In practice, Dr. Perry says, some of the agreements' provisions prevented her from competing, but TSG disputes this conclusion.

The parties also disagree about how much, if any, control TSG had over Dr. Perry's time.  Dr. Perry emphasizes that she agreed to work full-time for TSG and to prioritize her Pine Ridge services above all others.  She also agreed to avoid other activities that would conflict with her Pine Ridge services.  By agreeing to work the same number of undesirable shifts as other physicians, she asserts that

10

she lost control of her schedule.  TSG insists that Dr. Perry had control over hers and others' shifts and schedules.

Further, the parties argue about TSG's control over the business side of Dr. Perry's medical practice.  Dr. Perry says that TSG took virtually complete control of the business aspects of her practice.  Under the agreements, TSG owned her accounts receivable; Dr. Perry could not exercise the financial autonomy that an independent physician could.  Nor could she take the accounts with her if she left TSG.  Dr. Perry also agreed to accept payment from any payor that TSG selected, and allowed TSG to negotiate with these payors on her behalf.  TSG fails to see how these provisions show control over Dr. Perry.

Two more examples for good measure.  The parties dispute whether, through the agreements, TSG imposed control over the manner and means of Dr. Perry's performance as a physician via its protocols and practice guidelines.  And the parties dispute the importance of an episode related to Dr. Perry's decision not to replace most, if not all, the doctors in her department despite her supervisor's instruction to do so.

Therefore, the district court improperly granted summary judgment and judgment as a matter of law on all the Title VII claims based on Dr. Perry's employment status.

B.

11

Section 1981 prohibits racial discrimination in the making and enforcing of contracts. 42 U.S.C. § 1981. We analyze § 1981 claims related to employment under the same framework that we use for Title VII claims. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994). And the elements of a § 1981 race discrimination claim are the same as those of a Title VII disparate treatment claim. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). Vacatur and remand is appropriate when a district court relies on a legally incorrect standard in granting summary judgment for the defendant in an employment discrimination case. *See Wright v. Southland Corp.*, 187 F.3d 1287, 1288 (11th Cir. 1999).

Here, the district court relied on incorrect legal reasoning to grant summary judgment for TSG on Dr. Perry's § 1981 claim.[4] It cited *Hulsey v. Pride*

---

[4] TSG argues that we lack jurisdiction over Dr. Perry's § 1981 claim against it because Dr. Perry omitted that claim from her Fifth Amended Complaint after we advised her to drop her § 1981 claim against Naples HMA from that complaint. Contrary to TSG's argument, we have jurisdiction over Dr. Perry's § 1981 claim against TSG. "As a general matter, an amended pleading supersedes [and abandons] the former pleading." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (alteration accepted) (internal quotation mark omitted). But we do not apply the general rule rigidly to deny plaintiffs the ability to appeal a dispositive order that preceded the amended pleading and that struck "a vital blow to a substantial part of [the] cause of action." *See Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1237–38 (5th Cir. 1978) (internal quotation mark omitted), *vacated on other grounds First Houston Inv. Corp. v. Wilson*, 444 U.S. 959 (1979). Moreover, we know that an order granting summary judgment merges into the final judgment and is open to review on appeal from that judgment. *Aaro, Inc. v. Daewoo Int'l (Am.) Corp.*, 755 F.2d 1398, 1400 (11th Cir. 1985). Therefore, Dr. Perry's seemingly accidental omission of the § 1981 claim against TSG from her final amended complaint does not prevent her from appealing the district court's grant of summary judgment on that claim.

12

*Restaurants, LLC*, 367 F.3d 1238, 1246 (11th Cir. 2004), to conclude that, as a matter of law, a failure to investigate a discrimination claim cannot serve as evidence of discrimination. This was error. In *Hulsey*, we said that the *Faragher-Ellerth* affirmative defense, which is based on a plaintiff employee's failure to use an employer's system for reporting and preventing harassment, "applies only to employer liability based upon a hostile environment theory," rather than "a tangible employment action theory," in sexual harassment cases. *Id.* *Hulsey* did not even remotely address whether a failure to investigate can serve as evidence. And how could it have addressed such a question—the defendant's human resource manager *did* investigate the plaintiff's claims. *Id.* at 1242. *Hulsey* is inapposite.

Because of its misplaced reliance on the *Hulsey* case, the district court failed to consider Perry's claim that TSG's failure to investigate was evidence of discriminatory treatment. An employee who alleges discriminatory treatment must show that her employer acted with discriminatory intent through either direct or circumstantial evidence. *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 921 (11th Cir. 2018). "Direct evidence is evidence, that, if believed, proves the existence of discriminatory intent without inference or presumption." *Id.* (citation omitted and alterations adopted). In contrast, circumstantial evidence "suggests, but does not prove, a discriminatory motive" and is evaluated under the burden-shifting test

13

established in *McDonnell Douglas Corp. v. Green*." *Id.* at 921–22 (internal

citation omitted). The district court failed to consider Dr. Perry's evidence under

either standard because it misread *Hulsey*. On remand, it should conduct this

analysis in the first instance.

### C.

The district court correctly dismissed Dr. Perry's common-law claims of

negligence, breach of contract, and breach of implied duty of good faith and fair

dealing. We address each in turn.

To bring a claim for negligence, a plaintiff must allege (1) duty, (2) breach,

(3) cause, and (4) harm to the claimant. *Williams v. Davis*, 974 So. 2d 1052, 1056

(Fla. 2007). Dr. Perry cited a purported breach by TSG of the TSG-Naples HMA

Exclusive Agreement, to which she was neither a party nor a beneficiary.

Nevertheless, she insists TSG owed her—as a known third party—a duty not to

cause her harm by failing to comply with the Exclusive Agreement.

The problem with this theory is that Dr. Perry alleged economic harm, not

physical harm, which is normally "an essential element of a cause of action in

negligence." *See Monroe v. Sarasota Cty. Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d

DCA 1999). Indeed, courts waive "that essential element only under extraordinary

circumstances which clearly justify judicial interference to protect a plaintiff's

economic expectations." *Id.*

14

Dr. Perry insists that she can proceed because, "[i]n limited circumstances, a party may recover purely economic losses arising from a misrepresentation that is made in a negligent manner." *Id.* at 537 (citing *First Fla. Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9 (Fla. 1990); Restatement 2d of Torts § 552 (1977) ("Information Negligently Supplied for the Guidance of Others")). But she failed to allege *any* elements of a claim for negligent misrepresentation. *See Coral Gables Distrib., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla. 3d DCA 2008) (stating the negligent-misrepresentation elements). In the end, Dr. Perry did not allege any extraordinary circumstances that justify our interference, so the district court was correct to dismiss her negligence claim. *See Monroe*, 746 So. 2d at 531.

Next, the claim for breach of contract. Such a claim has three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008), *review denied* 23 So. 3d 711 (Fla. 2009). Because Dr. Perry invokes provisions that impose duties and obligations on *her*, not TSG, she relies on the doctrine of prevention of performance. That doctrine applies, generally, when a contracting party is ready, willing, and able to perform, but the other party prevents her from performing by imposing obstacles not contemplated within the contract. *See, e.g.*, *Knowles v. Henderson*, 22 So. 2d 384, 386 (Fla. 1945); *Walker v. Chancey*, 117 So. 705, 707–08 (Fla. 1928); *Crane v. Barnett Bank of Palm Beach Cty.*, 698 So. 2d 902, 904

15

(Fla. 4th DCA 1997). The preventing party cannot then avail itself of the first party's nonperformance. *Knowles*, 22 So. 2d at 386.

Dr. Perry alleges that TSG instructed her to not report her alleged discrimination to Naples HMA; she followed that instruction, thereby failing to perform under the Physician Agreement; and then TSG used her failure to report and the absence of a resulting investigation to allow Naples HMA to end her service as Medical Director and physician at Pine Ridge.

Neither we nor the district court could shoehorn the facts of this case into that doctrine. Even if we assume that Dr. Perry's cited provisions required reporting, and that TSG's alleged instruction of noncompliance equals prevention of her compliance, Dr. Perry fails to allege facts that suggest that TSG somehow availed itself of her noncompliance. *See id.* Therefore, she fails to state a plausible breach-of-contract claim, and the district court correctly dismissed.

Finally, the claim for breach of implied duty of good faith and fair dealing. Such an implied duty "does not exist until a plaintiff can establish a term of the contract the other party was obligated to perform and did not." *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005). Here, Dr. Perry fails to identify a term that TSG was obligated to perform and did not. *See id.*

Nevertheless, Dr. Perry insists that, based on the facts of this case, TSG had an implied duty to cooperate with her and did not.  *See PL Lake Worth Corp. v. 99Cent Stuff-Palm Springs, LLC*, 949 So. 2d 1199, 1201 (Fla. 4th DCA 2007) (explaining how the implied duty of good faith includes a duty to cooperate). "When a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing." *Sharp v. Williams*, 192 So. 476, 480 (Fla. 1939).  If "the cooperation of one party is an essential prerequisite to performance by the other, there is not only a condition implied in fact qualifying the promise of the latter, but also an implied promise by the former to give the necessary cooperation." *Id.*  But Dr. Perry fails to allege facts that suggest such an implied duty; she fails to explain how TSG's cooperation was an essential prerequisite to her performance.  *See id.*; *see also PL Lake Worth Corp.*, 949 So. 2d at 1201 (involving a landlord's withholding of information that was missing and essential for calculating an amount owed in a renewal contract).  Thus, based on Dr. Perry's allegations, no cause of action for breach of an implied duty exists.

### III.

For the foregoing reasons, the district court correctly dismissed Dr. Perry's common-law claims.  But it erred when it granted summary judgment for TSG on Dr. Perry's Title VII and § 1981 claims and judgment as a matter of law for Naples

17

HMA on Dr. Perry's Title VII claims.  Therefore, we AFFIRM the dismissals of the common-law claims.  We also REVERSE the grants of summary judgment and judgment as a matter of law on the Title VII claims, VACATE the grant of summary judgment on the § 1981 claim, and REMAND the Title VII and § 1981 claims.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND VACATED AND REMANDED IN PART.**

HINKLE, District Judge, concurring:

I fully concur in the panel opinion and add a note confirming my understanding of the issues that will be open on remand.

First, the record would support a finding that Dr. Perry would not have lost her job had she been a white man instead of an African American woman. And the record would support a finding that both TSG and Naples HMA knew it. These issues must be resolved by a jury.

Second, TSG's business, as relevant here, was managing and staffing this hospital's emergency room. TSG hired Dr. Perry to perform an essential role—indeed, the *most* essential role—in that business. If a company's pipe bursts and the company calls in an unrelated plumber to fix it, the plumber is usually an independent contractor. But when a plumbing company hires a fulltime plumber to provide services to its customers all day every day—to carry out the company's mission—the plumber is usually an employee. Dr. Perry didn't come to this hospital to fix an isolated broken pipe. She was there to run the shop and carry out the company's mission. A jury could find that Dr. Perry was an employee.

The bottom line: on remand the Title VII race, gender, and retaliation claims will go forward against both TSG and Naples HMA. The § 1981 race claim will go forward only against TSG; it was abandoned against Naples HMA.

19